YARNELL v. THE KANSAS CITY, FORT SCOTT & MEMPHIS RAILROAD COMPANY, *Appellant*.

Division Two, January 31, 1893.

1. **Railroad**: PASSENGER: NEGLIGENCE: NOTICE. A railroad need not wait for a passenger to reach his seat before starting the train, unless there is some special reason therefor as in case of a weak or lame person, and then the carrier must have notice of the fact creating the exception.

2. ———: ———: ———: ———. Where access to a train at a station is easy, it is not required of the company's employes to assist a passenger in getting on board.

3. ———: PERSON ASSISTING PASSENGER: NEGLIGENCE: NOTICE. It is not negligence for a carrier to start its train before a person who has assisted a passenger on board has had time to get off, unless its servants had notice of his intention to get off.

4. ———: ———: INSTRUCTION. Where the petition charges the negligent starting of the train before the passengers had time to get aboard, an instruction is improper which authorizes a recovery if the company's servants started the train before the deceased who assisted his daughters on the train had time to alight.

5. ———: ———: PRESUMPTION. Negligence on the part of a carrier cannot be presumed from the mere fact of an accident and injury to such decedent.

*Appeal from Howell Circuit Court.*—HON. W. I. WALLACE, Judge.

REVERSED.

ACTION for damages for the death of plaintiff's husband, the petition claiming that such death was

caused by the negligence of defendant, in the manner following, to-wit:

That plaintiff's husband, at three o'clock A. M., on July 7, 1890, took his two daughters to Brandsville, a station on defendant's road, to put them on a passenger train due about that hour; that, when arrived, no employe of defendant appeared to assist his daughters upon the train, and that he helped them upon it; "that before he could get them safely on said train, the servant's and employes of defendant carelessly and negligently started said train in motion, and that the said Yarnell alighting therefrom fell, and was run over and killed by defendant's said train of cars; that said train barely stopped at said depot and station, and wholly failed to give said parties time to get aboard thereof; that, in consequence of the negligent failure of defendant's servants and employes to alight from said train and assist passengers thereon, and the negligent failure of defendant's servants and employes to have lights on said platform and at said station, as aforesaid, and in consequence of the negligent starting of said train before passengers had time to get aboard thereof, the said Robert M. Yarnell was run over and killed by defendant's train of cars, as aforesaid."

A second count in the petition contained substantially the same averments as the first, with the following in addition:  "That the platform at said station was out of repair and unsafe for use by the public; that it was rotten and broken in many places and that, in attempting to alight from said moving train, deceased stepped on a decayed plank in the platform, which broke, and caused him to fall back under the train by which he was killed, and that the negligence of defendant in having an unsafe platform caused his death."

The answer contained a general denial and a plea of contributory negligence, and plaintiff replied.  Having

introduced her testimony, the plaintiff rested after having dismissed as to her second count, and the court instructed the jury to disregard any testimony on that count. Defendant declined to offer any testimony but demurrer to that offered by plaintiff, which demurrer was overruled. Under the instructions given the jury returned a verdict for plaintiff in the sum of $5,000, and judgment went accordingly, from which defendant appeals.

The record has been printed in full and has been carefully read. The testimony in substance shows this state of facts: Robert M. Yarnell, the husband of plaintiff, was a strong, active man, nearly forty-four years old at the time of the accident which is the basis of this action. He lived with his family some seven miles from the station of Brandsville. About two o'clock on the morning of the seventh day of July, 1890, he went with his two daughters, one married and the other single, to Brandsville to put them aboard the cars of the defendant company. George Wall, a cousin of the young ladies, accompanied the party. The daughters were going to the home of one of them, Mrs. Curry, who lived near McDonald. Arriving at Brandsville at about three fifteen A. M. the party proceeded to the depot where the father bought tickets for his daughters only, as neither he nor Wall intended to become a passenger. There were no lights on the platform of the station; but the moon was shining, and when the expected train arrived it stopped, and the agent brought out a light, and the party proceeded to get on the train. The father and George Wall assisted the young ladies to get on the train, and George Wall, taking the two valises from the hands of the father, left him either standing on the bottom step of the car, or else on its platform, or else on the depot platform, and went with the ladies through the car which they first

entered, and to the second or third seat of the next or chair car, where the ladies obtained seats.   About that time the train started.   Leaving the ladies and valises, Wall went to the platform of the car, where he saw a negro whom he took for the porter, standing on the steps looking backward; this, if the porter, was the only employe, aside from the agent of the defendant company, that Wall saw up to that time, nor had any persons been seen by Wall and his party getting off or on the train.   He then jumped off the train; and estimated that the point where he got off was twenty-five or thirty feet above the end of the depot platform. When he reached the end of the depot platform he. found Yarnell there dead, having been decapitated, it would seem, by the cars.   The body lay on its side at the upper end of the platform, between the platform and the rail; the right foot was fastened under the platform, and the head of the deceased "was just apast the end" of the platform.   There was blood on the rail where the corpse lay, but there were no indications that the body had been dragged.

How far the "switch" is from the depot does not appear, nor how long the depot platform is; but when the switch was reached, the conductor came from the back of the car on which the ladies were, stopped the train and said to the ladies, "the old gentleman has been hurt;" helped them to alight, and they went back to the scene of the accident.   How long the car stopped at the time the daughters of plaintiff took passage cannot be told.   Wall, testifying on this point, said "about a minute."   Mary Yarnell that the train started "just about the time we got seated."   In response to the question whether the train stopped, Mrs. Curry said "Yes, sir, it did;" but being pressed by counsel to say "about how long," replied, "Hardly a stop; it was almost moving all the time."

All the testimony respecting the condition of the depot platform having been properly excluded by the court from the consideration of the jury, when the plaintiff dismissed as to the second count in her petition, such testimony forms no part of this record and will not be further noticed.

*Wallace Pratt, I. P. Dana* and *Olden & Orr* for appellant.

(1) The demurrer to the evidence should have been sustained and defendant's instruction number 1 given, because, *first*, there was no evidence of any negligence towards anyone on the part of defendant or its employes, as alleged in the petition or in any respect. *Raben v. Railroad*, 34 N. W. Rep. 621; *Raben v. Railroad*, 35 N. W. Rep. 645; *Straus v. Railroad*, 75 Mo. 185; *Hurt v. Railroad*, 94 Mo. 255; *Gurley v. Railroad*, 104 Mo. 223; *Roddy v. Railroad*, 104 Mo. 244; Patterson's Railway Accident Law, secs. 7, 258; *Williams v. Railroad*, 96 Mo. 284; *Shaw v. Railroad*, 104 Mo. 654; *Clotworthy v. Railroad*, 80 Mo. 220; *Lawton v. Railroad*, 18 S. W. Rep. (Ark.) 543. *Second.* There was no evidence of any failure on the part of defendant in any duty it owed deceased, nor did the petition aver any such failure. *Coleman v. Railroad*, 40 American & English Railroad Cases, 690; *Griswold v. Railroad*, 23 American & English Railroad Cases, 463; *Railroad v. Crunk*, 41 American & English Railroad Cases, 158; *Imhoff v. Railroad*, 20 Wis. 344; *Lucas v. Railroad*, 6 Gray, 64. *Third.* There was no evidence of what caused the death of plaintiff's husband or of how it happened. *Schlereth v. Railroad*, 96 Mo. 509; *Bowen v. Railroad*, 95 Mo. 268; *Murray v. Railroad*, 101 Mo. 236; *Stepp v. Railroad*, 85 Mo. 229. (2) The instruction given at plaintiff's request was erroneous. *Jones v. Jones*, 57 Mo.

138; *Forrester v. Moore*, 77 Mo. 660; *Kendig v. Railroad*, 79 Mo. 207; *Chouteau v. Iron Works*, 83 Mo. 83; *Crumpley v. Railroad*, 98 Mo. 34; *Rapp v. Railroad*, 106 Mo. 428; *Stevenson v. Hancock*, 72 Mo. 612; *Price v. Railroad*, 77 Mo. 508; *Frederick v. Allgaier*, 88 Mo. 598. (3) Defendant's instructions, numbers 1, 2, 3 and 4, should have been given. The refusal of each was error.

*James Orchard, A. H. Livingston* and *J. H. Winningham* for respondent.

(1) We can, in all confidence and candor, rest this case on two propositions, *first*, that Yarnell had a legal right under all the circumstances to go on the train to see his daughters comfortably and safely thereon; and *second*, the company owed him at least ordinary care and that it was negligent on its part in not stopping the train a sufficient length of time for him to alight therefrom in safety. In support of these propositions as being in point and decisive of this case we cite, *Doss v. Railroad*, 59 Mo. 27, and in support of the law of this case, see 2 American & English Encyclopedia of Law, p. 739, sec. 3, and cases cited in note 2. (2) The law, out of regard to the instincts of self-preservation, presumes that Yarnell, at the time of his death, was in the exercise of due care. The burden rests upon the defendant to rebut this presumption. *Flynn v. Railroad*, 78 Mo. 195.

SHERWOOD, J.—The controlling question in this case, as already seen, is whether the testimony adduced to support the first count in the petition is sufficient to sustain the verdict.

It will have been observed that the *gravamen* of the petition is contained in its concluding words:

"That said train barely stopped at said depot and station, and wholly failed to give said parties time to get aboard thereof; that in consequence of the negligent failure of defendant's servants and employes to alight from said train and assist passengers thereon, and the negligent failure of defendant's servants and employes to have lights on said platform and at said station, as aforesaid, and in consequence of the negligent starting of said train before the passengers had time to get aboard thereof, the said Robert M. Yarnell was run over and killed by defendant's train of cars, as aforesaid."

I. It is quite clear from the testimony that the daughters of the plaintiff "did have time to get aboard" and even to be seated before the train started. But, under the authorities, the defendant company did not need to wait till the passengers were seated before the cars started. "As soon as a passenger has fairly entered the vehicle, the carrier may start without waiting for him to reach a seat, unless there is some special reason for doing so, as in the case of a weak or lame person, or of a passenger on the outside of a coach. And the ground of the exception must be brought to the carrier's notice, or he will be justified in starting in the usual manner." 2 Shearman & Redfield on Negligence [4 Ed.] sec. 508. So that, neither upon the facts nor the law is the plaintiff entitled to recover on this charge in the petition.

In the circumstances heretofore related, it was no part of the duty of the defendant's employes to "alight from said train and assist the passengers thereon," and negligence cannot therefore be based on such alleged failure. When access to the cars of a railway company is easy, as in the case at bar, such assistance cannot be claimed as a matter of right. 2 Shearman & Redfield on Negligence, sec. 510. It has been ruled that it is

not the duty of the employes of a railway company to assist a passenger to alight *from* a train. *Raben v. Railroad*, 74 Iowa, 732. This was substantially the view taken by this court in *Hurt v. Railroad*, 94 Mo. 255; see also *Sevier v. Railroad*, 18 American & English Railroad Cases, 245. And obviously the reasoning which denies the right of assistance to a passenger *from* a train would also deny it in getting *on* a train; the two cases cannot be distinguished in principle.

As before stated, the testimony shows that on the night of the accident the moon was shining, and there is no testimony indicating in the slightest degree that the absence of stationary lights from the platform had any connection with the injury, nor does it appear that the defendant company's employes were aware of Yarnell's being on the train in any other capacity than that of a passenger, if indeed they were aware that he was on the train at all; and there is no testimony on either of these points.

There is not a particle of testimony that Yarnell entered the cars in attendance on his daughters. So that the doctrine of the right to "welcome a coming or speed a departing guest" has no application here. And it is to be noted that the petition does not count upon the failure of duty on the part of the defendant's employes toward *him*; the charge of failure of duty on the part of the defendant company consisted in "the negligent starting of said train before the *passengers had time to get aboard thereof*, and it is not charged that sufficient time was not given Yarnell to get off the train, or that the company had any notice of his desire in that particular; nor, if there had been such a charge, would there have been any evidence to support it. Even if Yarnell had actually been upon the train in

attendance upon his daughters, and had intended to leave the train after seeing them to their seats, there is no testimony, as before stated, that the company's servants had any knowledge of this fact. The authorities are virtually unanimous in holding that unless knowledge of such a purpose is communicated to the company's servants, that no duty arises to hold the train for a reasonable time in order that such purpose may be accomplished. *Griswold v. Railroad*, 23 American & English Railroad Cases, 463; *Coleman v. Railroad*, 40 American & English Railroad Cases, 690; *Lawton v. Railroad*, 18 S. W. Rep. 543, and cases cited; *Lucas v. Railroad*, 6 Gray, 64; *Imhoff v. Railroad*, 20 Wis. 344.

In such cases the *duty* is dependent upon the *knowledge* of the carrier, and the *negligence* upon the *non-performance* of the *ascertained* duty; without the presence of these constituent elements, *liability*, which is but the legitimate result of a known and non-performed legal duty, cannot exist.

The foregoing remarks and the authorities which abundantly support them show that the court below erred in giving, at plaintiff's instance, the following instruction:

"The court instructs the jury that if you believe and find from all the facts and circumstances in evidence that the husband of plaintiff, Robert M. Yarnell, took his two daughters to defendant's train, and that when defendant's train arrived at Brandsville station the defendant's servants failed to appear and assist said Yarnell's daughters on said train, then said Yarnell had the right to assist his daughters on such train; and if the jury further believe that the said Yarnell did go upon the platform of defendant's train to assist his daughters on the train, in the absence of defendant's servants, then the said Yarnell had a right so to do;

and that if defendant's servants *started said train before said Yarnell had time to alight from said train,* and in alighting from such train he did so as speedily and carefully as possible and was killed in so doing without negligence and carelessness on his part, then they will find the issues for the plaintiff and assess her damages in the sum of $5,000."

And it may be further observed of this instruction that it is a *departure* from the cause of action as set forth in the petition, in that it introduces a new element of liability, one unknown to the petition, to-wit: that "the defendant's servants started said train *before said Yarnell had time to alight from said train."*

II. This record is utterly barren of any testimony showing or tending to show how or in what way Yarnell came to his unfortunate death. His locality at the time his daughters and Wall left him on entering the cars, whether he was on the bottom step of the car, on the car platform or on the depot platform, is entirely unknown. And it is equally unascertained and unascertainable whether his death resulted from an attempt to alight from the cars while in motion and he was thus thrown beneath them and killed, or whether, having alighted, he ventured too close to the cars and was struck by them as they stated and hurled to his death. It has been suggested that it will be *presumed* that Yarnell was in the exercise of *"due care."* This may be granted, but, while indulging this presumption, it must not be forgotten that *everyone* is presumed to properly acquit himself of his engagements and his duty. *Lenox v. Harrison,* 88 Mo. 491 and cases cited. And that carriers of passengers are by no means outside of the pale of this favorable presumption. So that the result is that one presumption rebuts and neutralizes the other, like the conjunction of an *acid* and an *alkali.*

Again, we are asked to presume that the deceased was in the exercise of due care. This presumption is evidently invoked in order that if *"due care"* be *presumed* on the part of the *deceased*, that it may then be presumed that the *defendant* was guilty of *negligence*, or else the accident would not have happened. But it *is not allowable to build one presumption on another, and thus make a cause of action.* Negligence cannot be assumed from the mere fact of an accident and an injury. 1 Shearman & Redfield on Negligence [4 Ed] sec. 59. It is quite legitimate, when *facts* are *admitted* or *proven*, to draw from them such reasonable inferences as will be sufficient to sustain a verdict; but without this basis of fact a presumption has no office to perform. *Railroad v. Henrice*, 92 Pa. St. 431; *Railroad v. The State to use*, 54 Md. 113; *Sorenson, Adm'r, v. Paper & Pulp Co.*, 56 Wis. 338. See also *Wintuska's Adm'r v. Railroad*, 20 S. W. Rep. 819.

For the foregoing reasons the judgment will be reversed, and as there is no evidence on which to base a recovery we will not remand the cause. All concur.