# McGRATH v. ST. LOUIS TRANSIT COMPANY, Appellant.

### Division One, June 19, 1906.

1. **NEGLIGENCE: Insufficient Evidence: Surrounding Facts: Res Ipsa Loquitur: Double Inference.** Where all the facts connected with the accident fail to point to the negligence of the defendant as the proximate cause of the injury, but show a state of affairs from which an inference could as reasonably be drawn that the accident was due to a cause or causes other than the negligent act of defendant, the plaintiff cannot rely upon mere proof of the surrounding facts and circumstances, nor is defendant called upon to explain the cause of the accident or purge itself of the inferential negligence. The doctrine of *res ipsa loquitur* does not apply in such case.

2. ————: **Specific Allegation: Proof: Res Ipsa Loquitur.** Where specific acts of negligence are charged and not general negligence, the plaintiff, in order to recover, must prove the specific negligence charged. So that, although the case may be one to which, under proper pleading, the doctrine of *res ipsa loquitur* might apply, that doctrine cannot be invoked where plaintiff has by his petition based his right to recover on specific acts of negligence.

3. ————: ————: ————: **Stopping Car.** Plaintiff's husband was repairing defendant's street railway track at night and she charges that defendant carelessly and negligently caused its car to run upon her husband "without giving any warning by bell or otherwise of the approach of said car, and without using any care to control or stop said car." There is nothing in the evidence to show that the motorman made or did not make any effort to stop the car, and the witnesses were not questioned in regard to the matter, nor was the speed of the car shown, nor the distance within which it could have been stopped, nor whether the bell or gong was being sounded or not. The witnesses did, however, testify that they did not hear anything. *Held,* that simply not hearing anything was not negative proof that the bell was not rung, and the court erred in not sustaining defendant's demurrer to the evidence.

4. ————: **Contributory: Failure to use eyes and Ears.** It is the duty of an employee working on a street railway track to use his sense of sight and sense of hearing to discover the approach of a car. He has no right to become so engrossed in

197 Sup.—7

his work as to become negligent of his own safety. So that where a track-repairer, at work near midnight on the track, familiar with his work, knowing the schedule time of cars and the danger of his position, was standing facing the approaching car, which was lighted as cars usually are, and by the exercise of care could have known of its approach as others did who warned him, but careless of his danger or so absorbed in his work that he became oblivious thereto, and remained at his post trying to extricate a fast claw-bar until he was struck by the car, he was guilty of such contributory negligence as barred his recovery.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

REVERSED.

*Boyle & Priest, George W. Easley* and *Edward T. Miller* for appellant.

The demurrer to the evidence should have been sustained. (a)  Plaintiff's husband was guilty of negligence defeating a recovery.  Davies v. Railroad, 159 Mo. 1; Evans v. Railroad, 178 Mo. 504; Wheat v. St. Louis, 179 Mo. 572; Clancy v. Railroad, 192 Mo. 615. (b)  Defendant was not negligent in the manner charged, and if it was neglect in any respect, such negligence was not a proximate cause of the injury. Hook v. Railroad, 162 Mo. 569; Murray v. Railroad, 176 Mo. 189; Haller v. St. Louis, 176 Mo. 606; Haley v. Railroad; 179 Mo. 30; Roenfeldt v. Railroad, 180 Mo. 554; Harper v. Railroad, 187 Mo. 575.

*A. R. Taylor* for respondent.

When men are at work on a track repairing a track, and especially in the darkness of the night, when it is absolutely necessary that they should give their attention to the work, when the operators of cars know this, as the evidence without dispute in this case shows the motorman and conductor knew, to run the car up-

McGrath v. St. Louis Transit Co.

on the men whilst so at work and whilst in plain view of the motorman, the lights over them visible for a mile, is a little less, if less, than criminal negligence.  To say that a motorman, under these conditions, could continue to run his car down and over them, trusting that they would escape without any warning or care to meet the situation is, we submit, something in advance of the most extreme holding of a court on this question.  The workmen are human, subject to the ordinary attributes of human nature, one of which is that the mind finds it difficult or impossible to concentrate itself upon more than one thing at a time; when the mind is absorbed in an object of its attention, for the time being it can conceive no other impression.  Courts recognize this order of human nature, and consider it in determining human action.  They do not declare an act negligent as a matter of law because a person did not do what he might have done, but only when he does or omits to do what a person of ordinary prudence would have done or omitted to do under like circumstances.  Kane v. Raiload, 128 U. S. 91; Graney v. City, 141 Mo. 184; Loewer v. Sedalia, 77 Mo. 446; Maus v. Springfield, 101 Mo. 618; Flynn v. Neosho, 114 Mo. 572; Sullivan v. Railroad, 97 Mo. 119; Guenther v. Railroad, 95 Mo. 299, 108 Mo. 22; Bluedorn v. Railroad, 121 Mo. 267; Rapp v. Railroad, 190 Mo. 160; Morgan v. Railroad,159 Mo. 274; Scullin v. Railroad, 184 Mo. 707; Reardon v. Railroad, 114 Mo. 398.  The humane doctrine, as defined by the courts, is this, if a person sees or has reason to expect a person through his own negligence is in danger from anything he is doing—after he becomes aware of such peril—he must, nevertheless, exercise ordinary care to avert injury to such person, and failing in this and causing injury to such person he is liable therefor.  The rule is clearly announced by the Supreme Court of the United States in Inland Seaboard Co. v. Tolson, 139 U. S. 558, and Railroad v. Ives, 144 U. S. 429.  This doctrine has been savagely contested in

this State, but is upheld by a consistent line of decisions since an early period. Kelly v. Railroad, 75 Mo. 140; Kelly v. Railroad, 95 Mo. 284; Guenther v. Railroad, 95 295; Kellny v. Railroad, 101 Mo. 75; Reardon v. Railroad, 114 Mo. 406; Schlereth v. Railroad, 115 Mo. 101; Chamberlain v. Railroad, 133 Mo. 599; Morgan v. Railroad, 159 Mo. 275; Scullin v. Railroad, 184 Mo. 707.

GRAVES, J.—Maria McGrath brings this action to recover $5,000 for the death of her husband, James McGrath. Defendant is an incorporated street railway company in the city of St. Louis. McGrath was, on the day of the accident, and for some time prior thereto, employed by defendant as a track-repairer or laborer upon its tracks.

The petition states two grounds of negligence, as follows:

"That on the 17th day of October, 1901, the plaintiff's husband was in the service of the defendant, repairing its tracks, and making alterations and improvements therein, at or near the intersection of Eighteenth street and Clark avenue in the city of St. Louis, when defendant's motorman and conductor in charge of its east-bound car, carelessly and negligently, and without giving any warning by bell or otherwise of the approach of said car, and without using any care to control or stop said car, caused and suffered said car to run upon and against said James McGrath and to so crush and injure him that he died from said injuries on the 17th day of October, 1901.

"And for another assignment of negligence the plaintiff avers, that whilst the plaintiff was so at work for the defendant, he was necessarily absorbed in his work, and was unable to keep a continuous watch for cars, and that it was the duty of defendant by its agents and foreman having charge of said work to give said James McGrath timely warning of the danger of an approaching car. Yet the plaintiff avers that the

defendant and its said foreman did uttterly fail and neglect to give said James McGrath timely or other warning of the approach of said car and thereby di-. rectly contributed to cause the injury and death of said James McGrath.''

It might be well to state that the second ground of negligence was abandoned by plaintiff both in the proof and in the instructions by her asked in the course of the trial.

The answer is, first, a general denial; second, an allegation that the deceased was warned by one or more of his fellow-workmen, but negligently failed to heed such warning, and remained upon or near the track, and was thus killed by his own negligence or want of care, and, third, the usual plea of contributory negligence, leaving out the allegation of warning given by his fellow-workmen.

The reply put in issue all new matter in the answer. Briefly summarized, the evidence in this case shows the following facts:

Defendant was operating a street railway in the city of St. Louis. On Eighteenth street it had a double track running north and south. North-bound cars used the east track and south-bound cars the west track. At Clark avenue, which crossed Eighteenth street at right angles, was a switch, by which certain cars left Eighteenth street to go upon the track on Clark avenue. The deceased and one Thomas Barry were at work just west of Clark avenue on Eighteenth street. Other employees were at work on Clark avenue close to this switch. Barry and deceased were engaged in pulling spikes. Barry had a claw-bar and deceased a hammer. Deceased would assist in setting the claw-bar and then when the spike was prized up to a certain distance, would put his hammer under the claw-bar, thus forming a fulcrum, by which the spike was prized out of the tie into which it had been driven. These parties, with others, had been at work in and about this point since

seven o'clock of the evening before the accident and until twelve o'clock that night, when they took lunch. Just after lunch these two laborers were at the place above stated and in the act of drawing a spike. Barry was using the claw-bar and the deceased the hammer. The spike was being drawn at the time of the accident and was one on the east rail of the east track, and Barry had his claw-bar across the track. As well as can be gathered from the evidence he must have been facing east or northeast. After he got his claw-bar on the spike, and before it was necessary to use the hammer, he saw the car coming and tried to detach his clawbar from the spike but finding it "too fast" on the spike he cried out to McGrath, "Let it go," and he, himself, tried to get out of the way, but was struck by the car, as was also McGrath. McGrath, according to this witness, was doing nothing, and at the time was facing south toward the coming car, the car which struck both of them. The witness was closer to the approaching car than was McGrath by two or three feet.

One Patrick McGuire, who was working there that night, says that he had charge of a pole upon which were attached ten incandescent lights. This pole, by means of a hook placed over the wire, formed a circuit and furnished light by which the men worked. The pole handled by this witness was about ten feet north from where deceased and Barry were working. This witness first saw the car which struck and killed deceased when it was coming across the bridge, which was south of where the two men were at work. He says, "I saw it a long way off," and further says that when the car was within fifteen feet of the men, "I shouted to the men, 'Look out there,' and they didn't seem to take any heed of my warning." This witness admits that in testifying before the coroner, he stated that he gave this warning when the car was forty feet away, and that it being fresh in his memory, the statement before

the coroner was most likely correct. The witness also states that he was ten feet from the men when he gave this warning; that had they acted promptly they could have gotten out of the way. McGuire says that deceased was "facing in a northwesterly direction pulling spikes," but also admits that Barry had the clawbar and deceased the hammer. He says deceased was struck in the side of the head, and says he was stooping a little at the time; that the car ran about a car-length after striking deceased before it stopped.

C. R. Ferguson, another witness, says that he was a laborer there on the night of October 16, 1901, when deceased was killed; that he was sixty to ninety feet away on Clark avenue; that he did not see the car strike deceased; that the first he saw of deceased, "he [deceased] was kind of doubled up and was rolling;" that the cars had been passing, as he presumed, about on their schedule time; that men working for the company expected these cars to pass in that way. He also says that prior to the accident the lights on the poles were being taken down.

The evidence further shows that the car in question was lighted upon the inside in the usual manner and had the head-light burning, and that there was no obstruction between deceased and the approaching car. There is no direct evidence as to the speed of the car, nor is there any evidence as to within what distance a car could be stopped when going at any given rate of speed. There is no evidence showing whether the motorman did or did not attempt to slow up his car before striking the plaintiff.

This, in substance, is the evidence for the plaintiff. At the close of the plaintiff's case defendant offered an instruction in the nature of a demurrer to the evidence, which being overruled by the court, appellant declined to introduce any testimony. The case was thereupon submitted to the jury, which returned a verdict for $5,000 against defendant. Motion for new trial and in

arrest of judgment proving unavailing, an appeal was duly perfected to this court.

Complaint is made of the giving and refusing of certain instructions, and the admitting and refusing to admit certain evidence offered, all of which will be considered in so far as the same may be necessary, in the course of the opinion.

I. Defendant insists now, as it did in the trial court, that there was no substantial evidence of negligence sufficient to carry the case to the jury, and its demurrer to the evidence should have been sustained. In our opinion this contention is well founded.

This is not a case, under the facts disclosed, where *res ipsa loquitur* applies. It has been said that there are but two classes of cases wherein this doctrine can be invoked: "(1) When the relation of carrier and passenger exists and the accident arises from some abnormal condition in the department of actual transportation; (2), where the injury arises from some condition or event that is, in its very nature, so obviously destructive of the safety of person or property, and is so tortious in its quality as, in the first instance, at least, to permit no inference save that of negligence on the part of the person in control of the injurious agency." [Benedick v. Potts, 88 Md. 52.]

But in this case the inferences are at least equal as to whether the accident was the result of the negligence of the deceased, or of the defendant.

Where all the facts connected with the accident fail to point to the negligence of the defendant as the proximate cause of the accident, but show a state of affairs where an inference could be as reasonably drawn that the accident was due to a cause or causes other than the negligent act of the defendant, then the plaintiff cannot rely upon mere proof of the surrounding facts and circumstances of the accident, and the defendant is not called upon to explain the cause of the accident, and to purge himself of the imputed or inferential neg-

ligence. [Cothron v. Cudahy Packing Co., 98 Mo. App. l. c. 349.]

But even if it were a case to which, under proper pleadings, the doctrine would apply, yet in this case specific acts of negligence are charged and not general negligence. In such cases where the plaintiff chooses in the petition to allege specific acts of negligence, the rule of law places the burden of proving such specific negligence upon the plaintiff, and a recovery, if had at all, must be upon the specific negligence pleaded. [Hamilton v. Railroad, 114 Mo. App. l. c. 509; Ely v. Railroad, 77 Mo. 34; Leslie v. Railroad, 88 Mo. 50; Yarnell v. Railroad, 113 Mo. 570; Bunyan v. Railroad, 127 Mo. l. c. 19; Hite v. Railroad, 130 Mo. l. c. 136; McManamee v. Railroad, 135 Mo. l. c. 447; Bartley v. Railroad, 148 Mo. l. c.139; Gayle v. Mo. Car & Foundry Co., 177 Mo. l. c. 450; Breeden v. Mining Co., 103 Mo. App. 179.]

The plaintiff fell far short of proving the specific acts of negligence charged in her petition, and under the rule stated in the foregoing cases, thereby failed to make a case for the jury. There is nothing in the record showing whether the motorman made or did not make an effort to stop the car.

Three witnesses were upon the stand and were not even asked what efforts, if any, were made to stop or slow up the car; the speed of the car was not shown; the distance within which it could have been stopped was not shown; no witness says whether the bell or gong was being sounded or not. The only thing in the entire record is from the witness Ferguson as follows: "Q. Did you know of its approach by anything you heard? A. I did not;" and from witness McGuire as follows: "Q. What, if anything, did you hear before he was hit—did you hear anything? A. Not that I remember of;" and from witness Barry as follows: "Q. What, if anything, did you hear? A. I didn't hear anything until the car hit me; I heard it then, that's all."

McGrath v. St. Louis Transit Co.

These questions should have been directed to the point in issue, that of the failure to give warning by sounding the bell. Had they been so directed, the answers would have, perhaps, been intelligible and thrown some light upon this alleged failure of the defendant. These answers can hardly be said to mean, "I was giving attention to the car and heard or saw no bell rung or gong sounded." These answers hardly rise to the dignity of what is termed negative proof of the fact that the bell was not ringing or the gong being sounded. The witnesses were not even asked such a question. With the questions general as they are the witness may have had knowledge as to whether or not the bell was being rung, but yet not understood what was desired by the questions.

Ferguson says that his first knowledge of the accident was when they picked up deceased and put him in the car to be taken to the hospital. He also says he had not even seen the car before deceased was struck by it. What, then, is the value of his answer as set out above? The answer of McGuire is indefinite and valueless. He did not say whether the bell was rung or not rung, but, in effect, says that he had no recollection upon the subject.

The testimony of Barry, who was engrossed with the work of pulling the spike, is but little better. He saw the car coming and made an attempt to unloose his claw-bar from the spike, and failing in that, said McGrath, "Let it go," and started to leave the track. His answer is peculiar. In effect he says he heard nothing until the car struck him, but adds, "I heard it then, that's all." He does not say what he heard, nor what he failed to hear.

Plaintiff having charged that no warning was given by ringing a bell or otherwise, should have directed the evidence towards the alleged act of negligence. These witnesses could have been asked what, if anything, they saw or heard with reference to the bell or gong. The

questions and answers leave but vague inference to be drawn as to their meaning, so that we say that upon the whole testimony there was not such substantial evidence of defendant's neglignce as to authorize the submission of the case to the jury.

II.   But for another and stronger reason the defendant's demurrer should have been sustained, and that is the contributory negligence of the deceased. Deceased was employed to work upon the track; he was not unfamiliar with such work; he must have known that cars were constantly coming and going; he must have known the danger of his position, as any reasonable man would have known the danger of such position; others at work there and near the deceased saw the approaching car; the car had its head-light burning, and was lighted as cars are usually lighted; deceased was standing facing the approaching car doing nothing at the time; by the exercise of care he must have seen and known of the approaching car; Barry, who was with him and engrossed with his work, saw it, attempted to extricate his claw-bar from the spike, and failing in this, warned the deceased by calling out, ''Let it go;'' deceased was three feet further from the aproaching car than was Barry; McGuire, who was within ten feet of deceased, called to deceased and Barry, ''Look out there,'' when the car was forty feet distant, as he stated before the coroner's jury, and which on the trial he says was no doubt his best recollection of the fact; the car must have made noise by its progress, which, with attention, could have been heard; McGuire says that had deceased heeded his warning and acted promptly, he would not have been struck.

Now, conceding the negligence of the defendant's employees although the concession does violence to the evidence, under these facts, should plaintiff recover? We think not.

It was the duty of the deceased to use his sense of sight and sense of hearing for his own protection.   He

had no right to become so engrossed in his work, if he was so engrossed, as to be negligent of his own safety. [Davies v. Railroad, 159 Mo. 1; Wheat v. St. Louis, 179 Mo. 572; Evans v. Railroad, 178 Mo. 1. c. 517; Clancy v. Railroad, 192 Mo. 615.]

In Evans v. Railroad, supra, this court, through Judge Burgess, said:

"But plaintiff claims that even if deceased was guilty of negligence, yet if defendant's employees in charge of the train became aware of his peril, . . . in time to have enabled them by the exercise of ordinary care to have averted the injury, and they failed to exercise such care, plaintiff was entitled to recover. It will not do to apply this rule in all its strictness to section men whose business it is to work upon and keep in repair railroad tracks, for they are supposed to look after their own personal safety, and to know of the time at which trains pass, to look for them and see them, and to move out of the way. It is of common knowledge that these men often voluntarily wait until trains get dangerously close to them, and then step out of danger and let them pass by, and to require trains to stop upon all such occasions, when section men are discovered at work on the track, would not only be imposing upon railroads unjust burdens, but would greatly interfere with traffic and travel. Those in charge of trains have the right to presume in the first place that such persons will keep out of danger, and not until they have good reason to believe they will not do so, and then fail to use all proper means at their command to prevent injuring them, in consequence of which they are injured, or are injured by reason of the willful negligence of those in charge of the train, should the defendant be held liable, and there was nothing of that kind in this case. Our conclusion is that the demurrer to the evidence interposed by defendant should have been sustained."

In Davies v. Railroad, supra, it was said:

McGrath v. St. Louis Transit Co.

"The voluntary assumption of a position upon or so near to the tracks of a street railway, over which cars are run every few minutes, that they cannot pass without inflicting an injury to the party so positioned, unless the intervention of some independent agency occurs to prevent it, is an act in itself of the grossest negligence. The plaintiff had no right to assume a place of danger upon defendant's tracks, and deliberately engage in an undertaking in such manner as to deprive himself of the benefit of sight and hearing, common avenues through which the approach of danger is communicated, and trust that defendant's agents in the course of their employment would be more watchful of his own safety than himself."

Both of those cases were cited with approval by MARSHALL, J., in the very recent case of Clancy v. St. Louis Transit Co., 192 Mo. 615, and the doctrine as announced in said cases is fully recognized in that case.

In the Clancy case Judge MARSHALL makes this observation: "The plaintiff, therefore, had no right to permit his mind to become so engrossed in his work as to become heedless of his danger, and as not to take proper precautions to observe the approach of cars."·

It is quite evident from the facts in this case that this unfortunate accident was the result of the negligence of the deceased. He and Barry had gotten the claw-bar fast to the spike, and in their attempt to extricate the claw-bar, they remained in a place of known danger too long. We are, therefore, constrained to hold that the judgment of the lower court should be reversed.

This conclusion obviates the necessity of investigating further questions raised by the record. All concur.