HERMAN B. ANDERSON, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, July 7, 1910.

1. **PLEADING: Negligence: Specific Allegations of Negligence: Res Ipsa Loquitur: Burden of Proof: Railroads.** Plaintiff was employed in unloading ties from a work train. To get out of the way of a passenger train coming up from the rear, the work train started at a rapid rate for a switch track, and ran over some cattle at a crossing, which resulted in derailing the train and overturning the car in which plaintiff was riding. The petition alleged the specific acts of negligence to be the failure to place the air cars next to the engine and the running of said train at an unusual rate of speed, so that the engineer was unable to check the train and avoid striking the cattle. The evidence failed to show that the negligence pleaded was the proximate cause of the derailment. *Held*, that plaintiff having alleged the specific acts of negligence, the burden was upon him to show the acts and their connection with his injury, and that he has failed to make this proof.

2. ————: ————: **General Allegation of Negligence: Res Ipsa Loquitur: Burden of Proof: Railroads.** Plaintiff while employed in unloading ties from a work train was injured on account of a wreck of the train caused by running over cattle on the track.

Plaintiff's petition contained specific allegations of negligence. *Held*, that had the petition contained a general allegation of negligence against defendant in permitting or causing the train upon which plaintiff was injured to be wrecked, and that he was thereby injured, and plaintiff had then proven only the facts connected with his work and the subsequent derailment of the car on which he was riding, and his consequent injury, he would have made out a prima-facie case and cast the burden upon defendant to excuse itself from responsibility for the wreck, but having alleged specific acts of negligence, the burden was upon plaintiff to prove them.

3. **RES IPSA LOQUITUR: Pleading: Burden of Proof: General and Specific Allegations of Negligence.** Even though the facts in the case may be such under proper pleading as to warrant the application of the rule of *res ipsa loquitur*, yet where the plaintiff pleads specific acts of negligence the burden is cast upon him to prove the acts as pleaded, and he cannot rely on the doctrine of *res ipsa loquitur*.

4. **CONTRIBUTORY NEGLIGENCE: Occupying Dangerous Place: Instructions: Railroads.** Plaintiff had been engaged in unloading ties from a work train and was riding on one of the tie cars while the train was pulling into a switch track. The train was wrecked and the car on which plaintiff was riding was derailed, turned over and injured plaintiff. Defendant requested an instruction on the theory that plaintiff was negligently occupying a dangerous position at the time of the wreck. *Held*, that there was no evidence that the position occupied by plaintiff was ordinarily more dangerous as a place to ride than any other place on the train, and that the instruction was properly refused.

Appeal from Stoddard Circuit Court.—*Hon. J. L. Fort,* Judge.

REVERSED AND REMANDED.

*W. F. Evans, W. J. Orr* and *J. H. Orr* for appellant.

(1) There was no casual connection shown between the things complained of and the accident. There was an entire failure of proof as to the proximate cause. Foley v. McMahan, 114 Mo. App. 442; King v. Railroad, 211 Mo. 1; Coin v. Lounge Co. (Mo.), 121 S. W. 1; St. Clair v. Railroad, 34 S. W. 76; Evans v. Railroad, 17

Mo. App. 624; Lowry v. Railroad, 40 Mo. App. 554; Grattis v. Railroad, 153 Mo. 380; McGrath v. Railroad, 197 Mo. 97; Warner v. Railroad, 178 Mo. 133; Hodges v. Railroad, 116 S. W. 1131; Bradley v. Railroad, 64 Mo. App. 475; Lawrence v. Ice Co., 119 Mo. App. 328; Jackson v. Railroad, 157 Mo. 621; Railroad v. Tritts, 108 S. W. 841; Quisenbury v. Railroad, 126 S. W. 182.   (2) As a matter of law no rate of speed in the country is negligence *per se*, and there being no proof that the speed of this train was dangerous or was a cause of the accident, it was error to submit that matter to the jury. Potter v. Railroad, 18 Mo. App. 694; Main v. Railroad, 18 Mo. App. 388; Campbell v. Railroad, 59 Mo. App. 151; Owens v. Railroad, 58 Mo. App. 386; Lowry v. Railroad, 40 Mo. App. 554; Evans v. Railroad, 17 Mo. App. 624; Goodwin v. Railroad, 75 Mo. 73; Wallace v. Railroad, 74 Mo. 394; Young v. Railroad, 70 Mo. 336; Pryor v. Railroad, 69 Mo. 215; Railroad v. Ritchie, 102 Pa. St. 125; Childs v. Railroad, 150 Pa. St. 73.   (3) Having the choice of a safe place in which to ride after he stopped unloading ties (the caboose), and failing to go to the same, was a failure on the part of the plaintiff to exercise reasonable and ordinary care for his own safety, and contributory negligence, because the undisputed evidence shows that he would not have been injured had he gone to the caboose.   State ex rel. v. Railroad, 65 Atl. 635; Harding v. Railroad, 66 Atl. 151; Snow v. Mfg. Co., 66 Atl. 881; Railroad v. Stallings, 70 Ark. 603; Railroad v. Jones, 95 U. S. 439; Gilber v. Railroad, 107 S. W. 1021; Moore v. Railroad, 176 Mo. 528; Williams v. Railroad, 146 Mo. 572.   (4)  The rule, *res ipsa loquitur*, has no application in actions of this kind, between master and servant, where there are eye witnesses to the accident, or where specific acts of negligence are charged.   Klebe v. Distilling Co., 207 Mo. 480, 105 S. W. 1057.   (5)  Where the evidence leaves it to conjecture as to the cause of an accident, or when the evidence leaves it in doubt whether the accident resulted

from defendant's negligence or from other causes, there can be no recovery. O'Connor v. Railroad, 106 N. W. 161; Gettys v. Transit Co., 103 Mo. App. 564, 78 S. W. 82; Rissler v. Transit Co., 113 Mo. App. 120, 87 S. W. 578; Ries v. Transit Co., 179 Mo. 1, 77 S. W. 734; Moore v. Railroad, 176 Mo. 528, 75 S. W. 672.

*Wilson Cramer* for respondent.

(1) It is the duty of the master to use reasonable care to furnish his employee with reasonable safe tools and appliances with which to do the work required of him, and a reasonably safe place to work. Burkhard v. Rope Co., 217 Mo. 481; Huston v. Railroad, 219 Mo. App. 584. (2) The servant assumes no risk which arises from the negligence of the master. Charlton v. Railroad, 200 Mo. 435.

COX, J.—Plaintiff brought suit to recover damages for personal injuries sustained while in the discharge of his duty as an employee of defendant by the derailment of cars in consequence of a collision with cattle on the public crossing, and obtained judgment for five thousand dollars. Defendant has appealed.

The petition alleges that on the 13th of January, 1906, plaintiff, as an employee of defendant, was engaged in unloading ties from a moving train; that this train consisted of an engine, six flat cars loaded with ties and a caboose; that four of these cars were provided with air-brakes and two were non-air cars; the ties were unloaded as the train moved slowly along; that the rules of the company required the cars with air-brakes to be placed next to the engine, but in making up this train defendant negligently and carelessly placed the non-air cars next to the engine and the air cars in the rear and then proceeds as follows:

"That when the train had gone about two and one-half miles, it was discovered that a passenger train was

approaching from the rear, and for the purpose of clearing up the track for this train, defendant's agents and employees having charge of said work train, upon which plaintiff was then engaged in unloading ties, undertook to run their said train to a siding near the station of Taskee in order to let the passenger train pass.

"That for the purpose of reaching this siding ahead of the passenger train, they carelessly and negligently ran said work train at unusual and dangerous rate of speed and in excess of the speed prescribed for such trains, running between twenty-five and thirty miles an hour; that, before reaching the station of Taskee, said train was required to pass over a wagon road and bridge immediately adjoining which spanned a small bridge.

"And plaintiff further states that when said work train had started to run from said passenger train the two front cars had been unloaded and plaintiff was standing on the third car unloading ties.

"That when said train approached said public wagon road it was discovered that a lot of cattle were standing and lying on said road and on the railroad track, but owing to the great rate of speed at which the train was running and to the fact that defendant had carelessly and negligently failed to place the air cars next to the engine and that, therefore, its speed could not be checked and the train stopped in time, said train struck said cattle and the second, third and fourth cars in the train were derailed and thrown down the embankment."

Then, after describing plaintiff's injuries, the petition concludes as follows:

"That such injury and loss were occasioned to him by the carelessness and negligence of the defendant company in careless and negligent failure to place the cars having air-brakes next to the engine and in running its said train at a dangerous rate of speed, and that plaintiff has been damaged in the sum of seven thousand five hundred dollars for which he prays judgment."

The answer was a general denial, plea of contributory negligence and assumption of risk. The evidence on the part of plaintiff tended to prove the allegations of the petition as to the manner of making up the train and performance of the work, and that while at work the train moved from four to six miles an hour; that twelve miles per hour was the limit for trains on that track, but why this limit was fixed does not appear. That after the train had moved two miles or more and two cars of ties nearest the engine had been unloaded, and while unloading the third car, a passenger train was discovered approaching from the rear, and that then this work train without any notice to the employees increased its speed for the purpose of reaching Taskee, some four miles ahead, where it could be switched, allowing the passenger train to pass; that it ran eighteen or twenty or twenty-five miles per hour and was going at a fast rate when it reached the crossing where the accident occurred. Plaintiff's testimony as to the manner in which the accident occurred is as follows:

"We went something like two miles working along and paying no attention to anything but our work, and the train began to speed up, and we quit unloading on account it was going too fast and was dangerous; we looked back and saw the passenger train behind, and discovered what their idea was for running that way. No signal was given us or nothing of the kind, the train pulled and went right ahead at a very rapid speed."

"Q. Now, after you noticed the train was proceeding too rapidly to throw off ties, what did you see and hear? A. Well, we just stopped, and didn't really know what was the matter, and looked back and saw the smoke of the passenger train. Q. What do you mean by saying, 'We stopped?' A. We quit working—didn't throw off any more ties; we all stopped throwing off ties, and I looked back and saw the smoke of the passenger train, and asked no further questions; of course, I knew what the faster running meant—it was to clear the track.

Q. Well, what was done?  A.  They ran on and kept getting faster and seemed like about as fast as they could run, and all at once I heard the whistle sound for cattle; whistled several short blasts right close to· gether, and I looked up, and about the time I looked up I saw one red cow brute of some kind go to the right, and I didn't have any time until I saw this front car lunge off the track, and the next car turned off to the right—.  Q.  Which car turned off to the right?  A. The one ahead of the one I was on.  Q.  And the car you were on turned off to the left?  A.  Yes, sir.  Q.  What became of you?  A.  I fell underneath of it."

No other witness was able to give any more accurate account of the particulars of the accident.

The errors assigned relate to the giving and refusing of instructions and overruling demurrer to the testimony.

We shall first consider the demurrer to the testimony.  It is the duty of the master to provide his servants with a reasonably safe place to work, and had plaintiff, in this case, contented himself with a general allegation of negligence against defendant in permitting or causing the train upon which plaintiff was at work to be wrecked, and that he was thereby injured, and then had proven only the facts connected with his work and the subsequent derailment of the car on which he was riding and his consequent injury, he would then beyond question have made out a prima facie case and cast the burden upon defendant to excuse itself from responsibility for the wreck.  [Price v. Metropolitan Street Ry. Co., 220 Mo. 435, 119 S. W. 932.]

But instead of taking this course, plaintiff, in this case, alleged specifically that the placing of the air cars in the rear of the train disconnected from the engine and the speed of the train prevented the engineer from stopping it and that for that reason the train ran into some cattle on a crossing and that this caused the wrecking of the train and the injury to the plaintiff,  Having

Anderson v. Railroad.

made this specific allegation of negligence he assumed the burden of proving it and could not rely upon the doctrine of *res ipsa loquitur* even though the facts in the case are such that under a proper pleading he might avail himself of that rule. [McGrath v. St. Louis Traction Co., 197 Mo. 97, 94 S. W. 872, and cases there cited.]

All that the evidence in this case shows, as to the particulars of the accident, is, in substance, that the train was running at a rapid rate, some short sharp whistles were heard and a cow was seen to be thrown to the right and the wreck immediately followed.

To our mind this testimony wholly fails to prove that having the air cars disconnected from the engine and the speed at which the train was running caused the wreck. There is an entire absence of any testimony as to when the cattle were discovered on the track, except the fact that the alarm whistle was sounded just before the wreck, but how close the engine itself was to the cattle or the possibility of the engineer having been able to stop the train had the air cars been placed next to the engine, there is no testimony at all. As the burden was upon the plaintiff, this testimony should have been furnished by him, and since it was not, the instruction given on behalf of plaintiff should not have been given, and the demurrer to the testimony offered by defendant should have been sustained.

The defendant asked the following instruction:

"The court instructs the jury that if you believe from the evidence that plaintiff's injuries were caused by his negligence or dangerous position occupied by him on the ties on the third car from the engine, and that he could not have been so injured if he had gone to the caboose attached to the rear end of the train, or to the engine at the front of said train, and further believe that the position occupied by him was voluntarily assumed by him and was more dangerous than a position on the caboose or the engine, then you must find for the

defendant, although you may believe that the train was wrecked and the plaintiff injured by the negligence of the defendant or its servants or employees."

Another instruction of similar import was asked by defendant, both of which were refused.

There was no evidence that the position occupied by plaintiff was ordinarily more dangerous as a place to ride than any other place on the train. No wreck was anticipated and there was nothing to show that the car on which plaintiff was riding was any more likely to be derailed than any other car in the train. It is contended by appellant that plaintiff was ordered to go to the front of the train, or to the caboose, before the accident, but the evidence wholly fails to support this contention. There was some testimony tending to show that some suggestion about going to the tender was made by the foreman, but, if made, it was done that the men might be better protected from the wind, and not because it was thought to be dangerous for them to remain on the flat cars.

These instructions were properly refused because not warranted by the evidence.

For the errors noted the judgment will be reversed and the cause remanded. All concur.