Pate v. Dumbauld.

---

JOHN PATE v. B. A. DUMBAULD, Appellant.

Division Two, April 9, 1923.

1. **NEGLIGENCE: Specific Acts Alleged: Res Ipsa Loquitur.** Where the petition in plain and unequivocal language sets out in detail defendant's specific acts of negligence; there is no room in the case for the doctrine of *res ipsa loquitur.* Such being the pleading, plaintiff must prove the alleged specific acts, and cannot rely upon general negligence, whether the case be one of alleged malpractice or other negligence.

2. ——: **Physician: Malpractice: Presumption.** In the absence of any showing that the defendant did not possess the ordinary and average skill of allopath physicians in the community where he treated plaintiff for a broken leg, the law presumes that defendant did his duty.

3. ——: ——: ——: **Degree of Care.** No man should be held to a higher degree of skill and care than a fair average of his trade or profession, and the standard of due care of a physician is the conduct of the average prudent man of his profession in the community.

4. ——: ——: ——: **Nonsuit: No Substantial Evidence.** Where plaintiff has failed to establish, by substantial evidence, that defendant, a physician, was derelict in his professional duty to plaintiff, or that he was guilty of any of the specific acts of negli-

gence charged against him in the petition, the court should direct a verdict for defendant in plaintiff's suit for malpractice, and upon the taking of a nonsuit, with leave, by plaintiff, should refuse to sustain his motion to set the same aside and grant him a new trial.

5. ——: ——: ——: **Broken Leg: Failure of Evidence.** Plaintitff was kicked by a horse, and the bone of one leg was broken, and he was taken to a hospital. He called defendant, a practicing physician of the vicinity, who made a physical examination, washed the wound, cleansed it with an antiseptic solution, set the broken bones, and bandaged the leg in a woven wire splint; he continued to treat him regularly for three weeks and until the wounds healed, and then placed the leg in a plaster cast, and plaintiff testified that at that time there was no sensation in the leg except a "kind of grinding like the two bones rubbing together during the time it was in the cast." Two months after the accident, plaintiff discharged defendant, and employed an osteopath, who removed the plaster case, and took an X-ray photograph, which disclosed that there had been no union of the broken bones. This osteopath was the only expert witness for plaintiff, and he testified that there was no evidence that the bones had not been properly set; that plaintiff had been afflicted from epilepsy, and his blood was in an inpoverished condition, and the reason the bones had not united was that nature had failed to throw out from their broken ends the exudate or callus which is necessary to unite broken bones and supplies in persons in ordinary health; that it would have made no difference whether or not the bones were placed in apposition before the leg was placed in the wire bandage and their ends thereafter held together, as nature had not provided bone-growing material necessary to unite or bridge them; and that plaintiff could not tell by his sense of feeling either before or while his leg was in the plaster cast whether or not the bones were in apposition. *Held*, that the court properly gave a peremptory instruction to return a verdict for defendant, and upon the taking thereupon of a nonsuit by plaintiff, with leave to move to set the same aside, erred in sustaining said motion and granting him a new trial.

Appeal from Jasper Circuit Court.—*Hon. Grant Emerson*, Judge.

REVERSED AND REMANDED (*with directions*).

*Morrison Pritchett* and *Haywood Scott* for appellant.

(1) Where the petition does not allege any warranty, or contract, to cure, that is, to obtain a union of

the broken bones, but merely that the appellant, a physician and surgeon, was called to treat respondent's injuries and to set and care for the broken bones and that appellant "negligently and carelessly failed to join or properly fit said broken bones," etc., the issue presented is not whether a "cure" or union of the broken bones was obtained, but whether or not the defendant in his treatment of plaintiff's case, exercised that degree of skill and learning ordinarily possessed and exercised by members of his profession, in good standing, practicing in similar localities; and to warrant the submission of such issue to the jury, it was necessary for plaintiff to introduce competent testimony tending to prove that defendant did not exercise, in his treatment of plaintiff's case, that degree of skill and learning. Vanhooser v. Berghoff, 90 Mo. 487; Krinard v. Westerman, 216 S. W. (Mo.) 941, 942; 30 Cyc. 1570; Connelly v. Cone, 224 S. W. (Mo. App.) 1012; Spain v. Burch, 169 Mo. App. 95; Ewing v. Good, 78 Fed. 443; McGraw v. Kerr, 128 Pac. 870; Rogers v. Kee, 137 N. W. 260; Houghton v. Dickson, 155 Pac. 128; Zoterell v. Repp, 153 N. W. 692. (2)  There is no evidence that the defendant bound himself to effect a cure or to obtain any joining, or union, of the plaintiff's broken bones; and under the law his contract is not a warrant to cure, but only that he possesses and will use reasonable skill, judgment and diligence in performing the service, such as is possessed and employed by members of his profession. Vanhooser v. Berghoff, 90 Mo. 487.  (3)  The question in a malpractice case as to whether or not the physician, in his treatment, exercised that degree of skill and learning ordinarily possessed and exercised by members of his profession, in good standing, practising in similar localities, is a question of science and must, of necessity, be answered by the testimony of witnesses qualified to speak upon that question. No one but a physician or surgeon can say what degree of skill and learning should have been exercised in the treatment.  Therefore the law is well settled that malpractice must be substantiated by the testimony of expert

witnesses in order to prevail. Connelly v. Cone, 224 S. W. 1011; Spain v. Burch, 169 Mo. App. 109; Sheldon v. Wright, 67 Atl. 807; Wilkins v. Brock, 70 Atl. 575; McGraw v. Kerr, 128 Pac. 870; Pettigrew v. Lewis, 26 Pac. 458; Quinn v. Higgins, 24 N. W. 482; Longfellow v. Vernon, 105 N. E. 178; Willard v. Norcross, 85 Atl. 904; Rogers v. Kee, 137 N. W. 260; Barker v. Lane, 49 Atl. 963; Adolay v. Miller, 111 N. E. 313; Houghton v. Dickson, 155 Pac. 130; Miller v. Toles, 150 N. W. 118; Zoterell v. Repp, 153 N. W. 692; Ewing v. Good, 78 Fed. 442; Wurdman v. Barnes, 66 N. W. 111; Norkett v. Martin, 165 Pac. 256; Hunter v. Boroughs, 96 S. E. 369; O'Grady v. Cadwalter, 166 N. W. 759; DeBruine v. Voskuil, 169 N. W. 288; Robins v. Nathan, 179 N. Y. Supp. 281; Paulick v. Nipple, 180 Pac. 771; Sherer v. Eidenmuller, 187 Pac. 445; Louden v. Scott, 194 Pac. 488; Benson v. Dean, 133 N. E. 125; Holsapple v. Schofield, 187 N. W. 682; Heir v. Stiles, 110 N. E. 252; 9 Ency. Evidence (1 Ed.) 846; Rainey v. Smith, 201 Pac. 1106; Van Epps v. McKinney, 189 N. Y. Supp. 910. (4) It was for plaintiff to account for the failure of union and the cause of it, and if more than one cause was shown, for one of which defendant is liable, plaintiff must fail if competent evidence does not show that the damages are produced by the cause for which defendant was responsible. Hunter v. Boroughs, 96 S. E. 360; Fuchs v. City of St. Louis, 167 Mo. 635; Breen v. St. Louis Cooperage Co., 50 Mo. App. 202. (5) Plaintiff's expert testimony showing failure of union, due to nature's failure to provide bone growing material necessary to union, shows proximate cause for which defendant is not liable. DeBruine v. Voskuil, 169 N. W. 288; Snearly v. McCarthy, 161 N. W. 108. (6) The doctrine of *res ipsa loquitur,* that the injury itself, after its treatment by the physician or surgeon, is evidence of negligence or is a physical fact or circumstance from which the jury may infer negligence, is not applicable in a suit for damages, for alleged malpractice, against a physician and surgeon. A bad result, a failure of the broken bones to unite, or any other circumstance showing lack of success, is not evidence of negli-

gence or from which negligence can be inferred.   Mc-Grath v. Transfer Co., 197 Mo. 104; Ewing v. Good, 78 Fed. 442; Spain v. Burch, 169 Mo. App. 94; Connelly v. Cone, 224 S. W. 1012; Miller v. Blackburn, 185 S. W. 864; Baron v. Reading Iron Co., 51 Atl. 979; Wurdman v. Barnes, 66 N. W. 111; Staloch v. Holmes, 111 N. W. 264, 9 L. R. A. (N. S.) 712; Sheldon v. Wright, 67 Atl. 807; Pettigrew v. Lewis, 26 Pac. 458; Neifert v. Hasley, 112 N. W. 705; McGraw v. Kerr, 128 Pac. 870; Dye v. Corwin, 53 S. E. 147; Delong v. DeLaney, 55 Atl. 965; Carstense v. Hanselman, 28 N. W. 159; Miller v. Toles, 150 N. W. 118; Sawyer v. Berthold, 134 N. W. 120; Adams v. Junger, 139 N. W. 1096; Hansen v. Harris, 184 N. W. 262; Zoterell v. Repp, 153 N. W. 692; Hamrick v. Shipp, 52 So. 932; Shelton v. Hacelip, 51 So. 937; Hoffman v. Watkins, 138 Pac. 664; Houghton v. Dixon, 155 Pac. 128; 30 Cyc. 1584; Cooley on Torts (3 Ed.) sec. 800, p. 1424. (7)   The doctrine of *res ipsa loquitur* cannot be invoked even in a case where it is applicable, where the plaintiff has, by his petition, based his right to recover on specific acts of negligence.   McGrath v. Transit Co., 197 Mo. 105; Breeden v. Mining Company, 103 Mo. App. 179.

*Pearson & Butts* for respondent.

(1)   On demurrer all of plaintiff's evidence must be taken as true, and all reasonable inferences drawn in his favor.   Hague v. Threadgill, 236 S. W. 895; Vanhooser v. Berghoff, 90 Mo. 487; Wojcirchowski v. Coryell, 217 S. W. 638; Eicholz v. Poe, 217 S. W. 282; Brooks v. Brookes, 186 S. W. 638; Sontag v. Ude, 191 Mo. 617.   (2)   The judgment and opinions of experts are merely advisory. Their accuracy is not to be assumed by the court, and not binding on the jury.   Clingenpeel v. Cin. Tr. Co., 240 S. W. 177; Heyberg v. Henske, 153 Mo. 63; Adams v. Light & Power Co., 237 S. W. 172.

RAILEY, C.—On December 3, 1920, plaintiff filed in the Circuit Court of Jasper County, Missouri, a petition, in which he alleged that on the —— day of August, 1920, while engaged in his regular employment, he suf-

fered a serious and painful accident, resulting in the breaking of the front or shin bone of one of his legs. It is alleged that defendant was a practicing physician at Webb City, Missouri, where plaintiff sustained said injury and resides; that defendant held himself out as having, and professed to have, that degree of knowledge and skill which is ordinarily used and exercised by those who practice in the treatment of patients and injuries such as plaintiff sustained as foresaid; that by reason of the premises, plaintiff called defendant to treat his injuries; to set and care for the broken and injured bones of plaintiff's injured limb; that defendant undertook the treatment of plaintiff's limb as aforesaid, attempted to set and bind together the bone and broken ends thereof, and bind them in place, so that they might grow together, become strong, his leg be straight, and of service, in about six weeks.

He avers that defendant wholly failed to use the ordinary knowledge, skill, care or diligence, which it was his duty to exercise in the premises, but so negligently and carelessly conducted himself in and about the setting of said broken bones and the treatment of said injury, that he carelessly and negligently failed to join or properly fit said broken bones, but wholly failed to set them at all, and carelessly and negligently bound up said broken limb, without the setting of same, as it should ordinarily and properly have been set, and carelessly and negligently allowed it to be so impropery bound up for nearly three weeks, and thereupon undertook again to set said limb, and carelessly and negligently failed to join the bones thereof, or properly adjust and set the same, and carelessly bound up in a cast the said injured limb without being or having same properly set; that by reason of the premises, and as a direct result of defendant's negligence, plaintiff was caused to, and did, suffer great pain of mind and body, and will in the future suffer such pain; that he was confined unnecessarily to his bed for many weeks, said injured leg caused to be weak, shortened and deformed, so that he can never use it effectively, as he should have; that he will be permanently

impaired in the pursuit of his usual occupation as a laborer, all to his damage in the sum of $10,000, etc.

The defendant answered with a general denial.

The evidence on behalf of plaintiff tended to show that both parties to this action resided at Webb City; that respondent was employed as a laborer on the streets of said city; that on August 10, 1920, respondent, then twenty-seven years old, was kicked on his right leg by a horse; that the shin bone was broken in two at a point about midway between the knee and the ankle; that it was a compound fracture, with two open wounds (according to the plaintiff, but only one wound according to plaintiff's expert witness, Dr. Slaughter), one on top of the shin and the other on the side, one of the broken bones protruding, at the time of the accident, through the respondent's pants leg; that immediately following the accident, respondent was taken to the hospital at Webb City, and appellant called; that the latter there made a physical examination of respondent; that the leg of respondent was washed, cleansed with antiseptic solutions, and appellant, with the aid of the hospital nurses, dressed said wounds, set the broken bones and bandaged the leg up in a woven wire splint (called a De Puy splint); that appellant called against at the hospital that evening, and saw that plaintiff was resting well; that he called again the following morning and examined respondent's leg; that on the afternoon of last mentioned date, plaintiff was moved to his home at Webb City; that appellant called on respondent frequently at his house, attended him there, and treated the wounds on his leg until they healed; that as soon as the wounds were healed, which was about three weeks after the injury, appellant put the leg in a plaster cast; that during all the time the leg was in the wire splint, and at the time it was put in the plaster cast, it had remained in the same condition, in which it had been placed when set by appellant; that while the cast was on, respondent said he felt no sensation in the leg, where it was broken, except "kind of grinding like the two bones rubbing together during the time I was lying in bed with the cast on;" that appellant

called on respondent frequently after the plaster cast was put on; that on October 12, 1920, while the cast was still on, plaintiff discharged defendant from the case and called Dr Slaughter, of Webb City, an osteopath, to treat the broken leg; that Dr. Slaughter removed the plaster cast; that there was evidence of motion or non-union in the large bone between the ankle and knee; that on October 28, 1920, an X-ray photograph was taken, which disclosed that there had not been any union of the broken bones; that the X-ray showed the exudate, callus or glutinous mass (which nature ordinarily causes to exude or be thrown out from the ends of broken bones, within in few days after the breaking of the bones, and which make a bridge between the broken bones, and then hardens, and becomes bone, thereby forming a union), had not exuded or been thrown out from the broken bones in respondent's case, and that the broken bones had the appearance of a fresh break, that is, they had the same appearance that they would have had, if the X-ray had been taken immediately after the accident.

No expert witness testified in this case except the osteopath, Dr. Slaughter. His testimony was that there was no evidence that the broken bones had not been properly set. That the reason why no union had occurred was because nature had failed to throw out from the ends of the broken bones in respondent's leg the exudate or callus which is necessary to unite the bones, and that such failure we due to the condition of plaintiff's blood. That the plaintiff's health or physical condition was such that no bone-growing material was thrown out from the ends of his broken bones by nature. That it would have made no difference in this case whether the bones were put or held in apposition, or not, as nature had not provided or thrown out the bone-growing material necessary to join or bridge between the broken bones. That even if the bones were not put or held in apposition, the bridge of bone-growing material, in the case of a person in ordinary health, is thrown out anyway, and a union of the bones, of some kind, results. That in his treatment and examination of the respondent, Dr. Slaughter

learned why the broken bones were not in apposition and why no bone-growing material had been thrown out. He said the reason was because the respondent was afflicted with a form of epilepsy. That the respondent had been rejected from the army on account of his epilepsy. That respondent had an epileptic attack one morning in October while Dr. Slaughter was treating him, although he did not see him during the attack, but did see him shortly afterwards, and saw his appearance and his exhausted condition following it. That during these epileptic convulsions the muscles contract to such an extent that the broken bones would separate unless there was enough bone-growing material there to hold them together. Dr. Slaughter testified that from his first examination of respondent, which was on October 12th, and also from his examination and treatment of him from that date afterwards, including the day he took the X-ray picture, there was nothing that he found there from which he could say that respondent's leg had not been properly set by appellant on August 10th, and at the time the plaster cast was put on, August 27th. Dr. Slaughter further testified that the respondent's leg had atrophied, shrunken, from non-use after it was in the plaster cast, and that when he took the plaster off it (the cast) was loose on account of this shrinking of the injured leg while it was in the cast, and that, in the case of a young man, such as respondent, if a cast were put on tight enough to hold the bones in apposition while he had an epileptic fit, where there was no bone-growing material, as he found in this case, to hold the bones together, such a tight plaster cast would have tended to stop the circulation and that if circulation had stopped gangrene would have set in and destruction of the leg itself would have resulted. Dr. Slaughter testified that it didn't make any difference whether the bones were put or held in apposition or not, as apposition or no apposition did not affect the throwing out by nature of the bone-growing material; that the respondent could not tell by his sense of feeling either before or while his leg was in the plaster cast

whether or not the bones were in apposition or whether or not they were over-riding. That the flowing of bone-growing material from the ends of the broken bones, starts as soon as the bones are broken (in the case of a person in ordinary health) and continues for several days, and then stops and begins to harden and become bone, and that at the time the X-ray picture was taken, October 28th, almost eleven weeks after the accident, whatever exudate or bone-growing material had been thrown out would show in the picture as a bony substance. That the X-ray picture shows that no exudate or bone-growing material was thrown out by nature in respondent's case.

Dr. Slaughter testified that he knew of no treatment or medicine which could have been given respondent to cause the bone-growing material to flow from the ends of his broken bones. That the physical condition which was responsible for the failure of the bones to unite in this case, the failure of nature to provide bone-growing material, had existed in respondent for some time before he was kicked by the horse, and his leg thereby broken, and that the appellant had nothing to do with it and had no control over it.

The respondent testified that he could tell by feeling of his injured leg that there was a depression in it and therefore that the bones were not in apposition, but his only expert witness, Dr. Slaughter, testified that it would not be possible to determine whether they were in apposition or not. That it would take a medical expert to determine that question, and then he would have to have no bandages on the injured limb, and he would have to wait about a week and a half after the accident, and even then it might be a question in the mind of a physician without an X-ray as to the condition of the fracture. That the respondent, a day laborer (who testified he knew nothing about surgery or medicine), could not tell. That a man without a medical education couldn't tell.

There was no testimony by anyone, except the respondent himself, a layman, that the appellant had not,

in setting the broken bones and treating respondent, exercised that degree of skill and learning which is ordinarily possessed and exercised by physicians and surgeons of ordinary and average learning and ability under similar conditions and circumstances in the same or similar localities.

Respondent introduced in evidence ''Exhibit A,'' the X-ray photograph taken of his injured leg on October 28, 1920.

The foregoing covers substantially the evidence in the case.

At the conclusion of plaintiff's testimony, the court gave a peremptory instruction to the jury to return a verdict for defendant. Thereupon, plaintiff took a nonsuit, with leave to move to set the same aside. Plaintiff, in due time, filed a motion to set aside said nonsuit, etc., which was sustained, for the alleged reason, that the court erred in sustaining defendant's demurrer to the evidence. The defendant duly appealed from the order setting aside the nonsuit and granting plaintiff a new trial.

I.  At the outset, it is important to determine whether this is an ordinary action for damages, in which the facts constituting the alleged negligence are **Res Ipsa Loquitur.** specifically pleaded, or whether general negligence is pleaded, and a recovery sought under the doctrine of *res ipsa loquitur*.

The substance of the petition is fully stated heretofore, and need not be repeated. In plain, unequivocal language, it sets out, in detail, all the facts, including the alleged negligent acts of defendant in failing to perform his duty. Under such circumstances, there is no room for the principle of *res ipsa loquitur*, even if it might otherwise be applied in a case of this character, where general negligence is relied on. Where the plaintiff chooses in his petition to allege specific acts of negligence, as in this case, the rule of law places the burden of proving such negligence upon him, and a recovery, if had at all, must be upon the specific negligence pleaded.

[McManamee v. Mo. Pac. Ry. Co., 135 Mo. l. c. 447; Mc-Grath v. St. Louis Transit Co., 197 Mo. l. c. 105; Roscoe v. Met. St. Ry. Co., 202 Mo. l. c. 588-9; Zasemowich v. Am. Mfg. Co., 213 S. W. (Mo.) 799; Allen West Comm. Co. v. Richter, 286 Mo. l. c. 706, 228 S. W. l. c. 832; Rice v. White, 239 S. W. l. c. 144-5, and cases cited.]

Counsel for appellant in their briefs, vigorously assail the intimation, in Eichholz v. Poe, 217 S. W. (Mo.) l. c. 285, that a recovery may be sustained in a malpractice case, based upon the doctrine of *res ipsa loquitur*, and cite a large number of well considered cases, sustaining their contention. Having reached the conclusion, as heretofore stated, that this is an action based upon specific acts of negligence, it is unnecessary to consider the question as to whether a recovery can be had in a case, under a plea of *res ipsa loquitur*.

II. It is not claimed in the petition, or elsewhere, that defendant did not possess the ordinary and average skill of allopath physicians in Webb City and vicinity. In the absence of evidence on the subject, the law presumes that defendant did his duty. [Lenox v. Harrison, 88 Mo. l. c. 496; Mathias v. O'Neill, 94 Mo. l. c. 528; Yarnell v. Ry. Co., 113 Mo. l. c. 579; Hartwell v. Parks, 240 Mo. l. c. 544; Haggard v. McGrew Coal Co., 200 S. W. l. c. 1074 (Mo.); Wells v. Wells, 279 Mo. l. c. 69, 213 S. W. l. c. 833; B. C. F. G. Assn. v. Zollman P. Co., 220 S. W. (Mo.) 911; State v. McNeal, 237 S. W. (Mo.) l. c. 741.]

The testimony has been fully set out in the preceding statement, and need not be repeated. Dr. Slaughter, a witness for plaintiff, was the only physician who testified in the case. He removed the plaster cast from plaintiff's leg after defendant had been discharged. He said there was no evidence that the bones had not been properly set; that the reason why no union had occurred, was because nature had failed to throw out from the ends of the broken bones in respondent's leg the exude or callus, which is necessary to unite the bones, and that such failure was due to the condition of plaintiff's blood; that plaintiff's physical condition was such that no bone-growing material was thrown out from the ends of his bones

by nature; that it would have made no difference in this case, whether the bones were placed or held in apposition, or not, as nature had not provided or thrown out the bone-growing material necessary to join or bridge between the broken bones. Dr. Slaughter further testi-fied that respondent could not tell by his sense of feeling either before or while his leg was in the plaster cast, whether or not the bones were in apposition, etc. The testimony of Dr. Slaughter, taken as a whole, does not sustain the specific charges of negligence pleaded in peti-tion; nor does his testimony show that defendant was guilty of the negligence charged against him.

Counsel for appellant have cited an array of au-thorities in support of the proposition that respondent's case, if not supported by expert testimony, must fail. We do not deem it necessary to enter into any extended discussion of this subject. No man should be held to a higher degree of skill or care than a fair average of his trade or profession, and the standard of due care is the conduct of the average prudent man. Taking the testi-mony of plaintiff and his witness at full value, we are of the opinion that respondent has failed to show by substantial evidence that appellant was derelict in respect to his professional duty in this case, or that he was guilty of any of the specific acts of negligence charged against him in the petition. The testimony of Dr. Slaughter, as to respondent's lack of exudation, by reason of his de-pleted condition of the blood, is corroborated by the statement of respondent's counsel at the oral argument here, to the effect, in substance, that his client, after limping around for some time after receiving medical treatment, visited some watering places, took outdoor exercise, and thereafter walked into counsel's office a well man. We feel legally justified in accepting as true the statement of respondent's counsel, which clearly in-dicates that plaintiff's conjecture as to his prior physical condition, and defendant's alleged negligence, were not well founded. [State v. Ray, 225 S. W. (Mo.) 974 and cases cited.] The trial court properly refused to submit the case to the jury on mere conjecture, but erred in

setting aside the nonsuit and granting plaintiff a new trial. [Perkins v. Wilcox, 242 S. W. (Mo.) l. c. 979; Van Bibber v. Swift & Co., 228 S. W. (Mo.) l. c. 75; Cluett v. U. E. L. & P. Co., 220 S. W. (Mo.) l. c. 867; Grant v. K. C. So. Ry. Co., 190 S. W. (Mo.) l. c. 589-90; McGrath v. St. L. Transit Co., 197 Mo. 97, l. c. 105-6; Warner v. Ry. Co., 178 Mo. 125.]

Many other decisions of this court to the same effect may be found in the reported cases.

The cause is accordingly reversed and remanded, with directions to the trial court to set aside its order granting plaintiff a new trial, and to re-instate the judgment of nonsuit formerly entered in favor of defendant. *Davis* and *Higbee, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur.