NORA HILL, Respondent, v. C. M. JACKSON, Appellant.*

Kansas City Court of Appeals. June 16, 1924.

1. **EVIDENCE: Not Error to Permit Plaintiff to Testify That Defendant Dislocated Her Jaw at Time He Extracted Her Teeth.** Dislocation of a jaw being an injury not so obscure as to lie beyond the pale of testimony of a lay witness, the court did not err in permitting plaintiff to testify that defendant dislocated her jaw at the time he extracted her teeth.

2. **PHYSICIANS AND SURGEONS: Negligence: Refusal of Instruction Withdrawing from Consideration of Jury Alleged Negligence of Dentist in Causing Dislocation of Patient's Jaw Held Error.** Evidence *held* insufficient to make out a case of negligence against a dentist in connection with the dislocation of plaintiff's jaw, and as the doctrine of *res ipsa loquitur* is inapplicable to the facts, the court erred in not withdrawing from the consideration of the jury the alleged negligence of dentist in causing the dislocation.

3. ———: **Res Ipsa Loquitur: Doctrine of Res Ipsa Loquitur Not Applicable to Dislocation of Jaw Occurring During Tooth Extraction.** Doctrine of *res ipsa loquitur*, cannot apply to dislocation of jaw happening at time of extraction of teeth, when there is evidence that dislocation of jaw may occur when a tooth is being extracted with proper care.

4. ———: **Negligence: Degree of Care: Care Required of Dentist in Extracting Teeth is Skill Ordinarily Possessed by Dentists Practicing in Similar Localities.** Dentist in extracting teeth is required to use only that degree of knowledge, ability and skill that dentists

practicing in similar localities ordinarily possess, instead of that employed by dentists anywhere.

5. ———: Damages: Damages for Pain and Suffering Incident to Dislocation of Jaw not Recoverable Unless Result of Negligence. Plaintiff not entitled to recover for pain and suffering incident to dislocation of her jaw unless there was testimony tending to show negligence on the part of dentist in this particular.

6. TRIAL PRACTICE: Fact That Dentist Carried Liability Insurance Not Admissible. In an action against a dentist for malpractice, the fact that he carried liability insurance, and made report to insurer of alleged claim when suit was threatened, held inadmissible.

---

*Headnotes 1. Evidence, 22 C. J., Section 710; 2. Physicians and Surgeons, 30 Cyc., p. 1590; 3. Physicians and Surgeons, 30 Cyc., p. 1584; 4. Physicians and Surgeons, 30 Cyc., p. 1572; 5. Physicians and Surgeons, 30 Cyc., p. 1590; 6. Trial, 38 Cyc., p. 1498.

Appeal from the Circuit Court of Vernon County.—*Hon. B. G. Thurman*, Judge.

REVERSED AND REMANDED.

*A. E. Elliott* and *W. H. Hallett* for respondent.

*Ewing & Weing* for appellant.

BLAND, J.—This is a malpractice suit. Plaintiff recovered a verdict and judgment in the sum of $1500 and defendant has appealed.

The petition alleges— ". . . that defendant in extracting plaintiff's teeth as aforesaid did negligently, carelessly and unskillfully dislocate her jaw in so doing and did negligently and carelessly fail to discover that he had dislocated the same, and did negligently and carelessly fail to replace and reset it and to advise plaintiff that he had so dislocated it."

The facts show that plaintiff, as the result of a severe case of pyorrhea, suffered from inflammation of the gums and pus around the teeth which were broken down. She consulted the defendant, a dentist of Nevada, Missouri,

concerning her ailment and on August 8, 1921, the defendant extracted all of her upper teeth; she returned on September 6, 1921, and defendant extracted all of her lower teeth. Defendant testified that in extracting plaintiff's lower teeth he broke off one and had difficulty in getting it out. Over defendant's objection plaintiff was permitted to testify that defendant dislocated her jaw at the time her lower teeth were extracted. Plaintiff's husband testified—"I was present when he pulled my wife's teeth, and she screamed when he pulled her teeth, and told him she couldn't shut her mouth. He said it was the medicine drawing the muscles and that it would probably work out by the time we got home, and the jaws wouldn't be so stiff by then."

Plaintiff testified—"I told him (defendant) my jaw was dislocated and he said it was the effects of the medicine stiffening the muscles. "Q. How did you know your jaw was dislocated? A. Because I had such pain up here (indicating) in my jaw, and I couldn't close my mouth."

About ten days after the extraction of her lower teeth plaintiff, being in the same condition, that is, unable to close her mouth and with her jaw paining her, went to her family physician and he discovered that her jaw was dislocated but he did not attempt to set it. Another physician in the presence of the defendant afterwards made strenuous efforts to set her jaw by manipulation, without result, and plaintiff's jaw remained dislocated to the time of the trial.

There is testimony tending to show that it is a very easy matter for a dentist to discover by examination a dislocated jaw. There was conflict in the testimony as to whether it was easy or difficult to set a dislocated jaw at the time of the dislocation, but there was ample evidence to show that the longer the jaw is allowed to remain in this condition the greater the difficulty of setting it, for the reason that the working of the jaw-bone out of place tends to cause friction and a wasting away of the head of the bone, and the end of the bone may become

softened and the cavity where the bone has come out will start to fill up.

There was a great deal of testimony on the part of defendant tending to show that he did not dislocate plaintiff's jaw; that the condition of her jaw was caused as the result of an infection from the pyorrhetic condition of her mouth and gums; that this infection had been transmitted to the joint producing inflamed muscles and a thickening of the tissues at the head of the jaw-bone, a filling up of the socket in which it rests, causing ankolisis of the jaw and forcing the head of the bone down and out of place to a certain extent.

Dr. Hornback, testifying for plaintiff, stated that he made an examination of plaintiff about three or four months after the time the lower teeth were pulled and at that time he found that her jaw was dislocated; that plaintiff's jaw protruded forward and downward; that it was very easy to detect a dislocated jaw; that in his opinion the head of the jaw-bone rested on the tubercle process. There was evidence that plaintiff's jaw was in the same condition when Dr. Hornback examined her that it was in on the day it is claimed it was dislocated.

Denying that he had dislocated plaintiff's jaw, defendant, of course, admitted that he did not inform her that her jaw was dislocated and made no claim that he attempted to set it; on the contrary, the evidence shows that when plaintiff returned, some days afterwards, complaining of the condition of her jaw, he told her that she was getting along nicely. The evidence shows that it was the duty of a dentist who has dislocated a patient's jaw to immediately reset it.

It is insisted that defendant's demurrer to the evidence should have been sustained, and this is based, to a large extent, upon another point, and that is that the court erred in permitting plaintiff to testify that the defendant dislocated her jaw at the time her lower teeth were extracted. This was the only testimony, at least of a direct nature, that defendant dislocated plaintiff's jaw. It is insisted that whether plaintiff's jaw was dislocated

was a question for expert testimony, especially in view of the sharp conflict in the testimony on the question as to whether or not her jaw had been dislocated.

We think under the circumstances that the court did not err, at least on the ground assigned, in permitting plaintiff to testify that her jaw was dislocated. We do not think that the injury that plaintiff received is so obscure as to lie beyond the pale of the testimony of a lay witness and to depend entirely upon the opinion of an expert. The facts are that prior to the time plaintiff claimed that her jaw was dislocated, she had had no trouble with it but immediately after defendant extracted her teeth she had pains in her jaw, apparently in the vicinity of the joint. We think that where a person whose jaw was apparently in a healthy condition and is functioning properly goes to a dentist and has her teeth extracted and the dentist has difficulty in extracting one of them, breaking it off, and immediately thereafter the patient has pain in her jaw and is unable to close her mouth, it does not take the opinion of an expert to learn that her jaw is dislocated. [Ferguson v. Davis County, 57 Iowa, 601; Wise v. Railroad, 135 Mo. App. 230.] It is true that defendant introduced the testimony of many experts who gave it as their opinion that plaintiff's jaw was not dislocated. This testimony, as we have stated, tended to show that the condition of her jaw was brought about by reason of an infection being conveyed to the joint and there setting up inflammation, resulting in the forcing of the head of the bone out of the socket by a filling up process. There is no testimony that if the dislocation occurred under the circumstances detailed by plaintiff, that is, that the jaw was in good condition at the time she went to the dentist and at the time he pulled her teeth she experienced severe pain in her jaw and for the first time was unable to close her mouth, the change of condition that apparently took place at the time the dentist extracted her teeth, was caused by an infection.

There was, therefore, evidence not only to show that defendant dislocated plaintiff's jaw at the time he ex-

tracted her lower teeth and that this condition continued to exist, but that defendant failed to tell plaintiff that he had dislocated her jaw and that he made no effort to reset it.

We think, however, that the court erred in refusing to give defendant's instruction No. 1, withdrawing from the consideration of the jury the alleged negligence of the defendant in causing the dislocation of plaintiff's jaw. The undisputed evidence shows that a person's jaw may be readily dislocated; that the jaws of some persons are more easily dislocated than that of others; that the socket in some jaws is not as deep as it is in others; that in some persons the muscles and ligaments are tighter and hold the bone in the socket more securely than in others. There was evidence that in some people the jaw is frequently dislocated by a mere yawn. One dentist testified that he had a patient that came to him from time to time to have teeth extracted and that she would open her mouth and throw her jaw-bone out of place and the jaw would remain in that condition until the tooth was extracted and then she would put it back. The record is absolutely barren of any testimony of any unskillfulness or negligence on the part of defendant in extracting plaintiff's teeth. In fact, the only evidence on the point is to the contrary. Defendant testified that he used the proper and well-established method or technic in extracting her teeth. So plaintiff wholly failed to make out a case of negligence in connection with the dislocation of her jaw unless the doctrine of *res ipsa loquitur* applies to the facts in this case. That doctrine cannot apply unless we can say that according to the ordinary experience of mankind a dislocation of the jaw does not occur when a tooth is being extracted with proper care. Under the facts, of course, we cannot say this in the case at bar. [Spain v. Burch, 169 Mo. App. 94; Wilt v. McCallum, 253 S. W. 156; Nevinger v. Haun, 196 S. W. 39; McGrath v. Transit Co., 197 Mo. 97, 104.]

Plaintiff on this point cites the case of Eichholz v. Poe, 217 S. W. 282 (Mo.). This was a case where a

dentist fractured the jaw of a patient while extracting a tooth. The Supreme Court in the case of Pate v. Dumbauld, 250 S. W. 49, 52, stated that it was *intimated* in the Eichholz case that a recovery may be sustained in a malpractice case based upon the doctrine of *res ipsa loquitur*. But the facts in the Eichholz case are entirely different from those in the case at bar, as it is readily seen that to break a jaw is quite a different matter from dislocating one.

At another trial plaintiff in re-drawing her instruction No. 1 should change it so as to tell the jury that defendant was required to use only that degree of knowledge, ability and skill that dentists practicing in similar localities ordinarily possess, instead of that employed by dentists anywhere. [Hales v. Raines, 146 Mo. App. 232, 241.] Instruction No. 2 on the measure of damages should also be re-drafted so as not to submit to the jury any pain and suffering incident to the original dislocation of plaintiff's jaw unless there is some testimony at the next trial tending to show that there was negligence on the part of defendant in this regard. [See Fowler v. Burris, 186 Mo. App. 347, 350, 351; Carpenter v. McDavitt & Cottingham, 53 Mo. App. 393, 403.] At another trial plaintiff should refrain from getting before the jury the fact that defendant carries liability insurance. The evidence shows that it was not only defendant's duty to report to the insurance company in case he has injured a patient but also where he is threatened with a law suit, whether or not he actually injures the patient. Defendant's evidence tends to show that on account of a threatened law suit he made a report of the case to the insurance company. The fact that he made the report under such circumstances would not tend to show that he injured plaintiff at the time he extracted her lower teeth unless, of course, there is evidence that there was no law suit threatened at the time of his report.

We are not impressed with the contention of the defendant that it was a mere error of judgment on his part in failing to discover the dislocation and that even had

he discovered it, it was in his discretion as to whether he should notify the patient of the condition. There is positive testimony, in addition to the common sense view to be taken of the situation, that it was the duty of the defendant under the circumstances to immediately reset the jaw had he dislocated it. The matter of discovering the dislocation, the evidence shows, was a very simple one. Of course, it being admitted that defendant did not attempt to reset the dislocated jaw, the least he could have done was to acquaint plaintiff with the fact of the dislocation (if any) so that she could immediately seek medical aid elsewhere. It is stated in Carpenter v. McDavitt & Cottingham, supra, l. c. 402, 403—

"It is the well-settled law, that if injury result to the patient of an attending physician and surgeon by reason of the want of ordinary skill or *ordinary attention* in the treatment of the former by the latter, the former may recover damages for the injury and such as are compensatory in their nature."

The judgment is reversed and the cause remanded. All concur.