## ROGERS, Appellant, v. GROTE PAINT COMPANY, Respondent.

**St. Louis Court of Appeals, April 24, 1906.**

1. **LANDLORD AND TENANT: Eviction: Fire.** An eviction by the landlord of his tenant can not take place through the agency of an accidental fire.

2. **————: Fire: Reconstruction of Burned Building.** A lease of premises contained a stipulation that in case the premises should become untenable, the obligation to pay rent should cease, but if the lessor, on notice, should restore the premises to a tenantable condition, in a reasonable time, there should be an allowance for the time consumed in so restoring the premises. The premises was a four-story building and partly destroyed by fire. The landlord restored it as a three-story building and the tenant remained in the premises but refused to pay rent on the ground that he was evicted from the fourth story. *Held,* that having elected to remain in the premises, the tenant was liable for the rent according to the terms of the lease after the reconstruction of the building.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

REVERSED AND REMANDED.

*Fred Wislizenus* for appellant.

*S. T. G. Smith* for respondent.

(1) Eviction by act of landlord of any part of premises suspends payment of rent for remaining portion. Witte v. Quinn, 38 Mo. App. 690; Colburn v. Morrell, 117 Mass. 262; Fellebrown v. Hoar, 124 Mass. 583; Leesham v. White, 1 Allen 489; McAdam on Landlord and Tenant, secs. 478-479; Dyett v. Pendleton, 8 Cowen (N. Y.) 731; Upton v. Townsend, 17 C. B. 30. (2) Eviction is any interference by the landlord with the

tenant's beneficial use of the premises let. 11 Amer. and Eng. Ency. of Law, pages 470-471. (3) If a lease does not contain provision for its termination upon the total or partial destruction during the term, such destruction does not end the term. Gibson v. Perry, 29 Mo. 245.

BLAND, P. J.—On March 28, 1902, plaintiff leased to the defendant, for a term of five years, building No. 800, on North Main street, city of St. Louis, for a rental of three thousand dollars for the whole term, payable in installments of fifty dollars in advance on the twenty-fourth day of each month during the life of the lease.

Defendant entered into possession of the premises under the lease and has continued to occupy the same, paying the monthly installments of rent up to and including November 24, 1903, since which date it has ceased and refused to pay any rent. Suit was commenced in a justice's court to recover one month's rent due on February 24, 1904. Plaintiff recovered judgment in the justice's court, from which defendant appealed to the circuit court, where, upon a trial *de novo* to the court sitting as a jury, the plaintiff was forced to take a nonsuit with leave to set the same aside. On the refusal of the court to set aside the nonsuit, plaintiff appealed.

On November 17, 1903, a fire broke out in the premises and practically destroyed the roof and fourth floor of the building and materially damaged the third and second floors. The lease contains the following clause:

"It is agreed that if the premises above rented shall, during the term of this lease, become untenantable from any cause, then the obligation to pay rent shall cease; provided the lessor on being notified does not restore the premises to tenantable condition in a reasonable time, but if the lessor does restore the property in a reasonable time, the above provision shall be of no effect other than that the lessor shall make to the lessee an allowance

on the rent for the time consumed in putting the property in tenantable condition."

Under this clause the plaintiff undertook to restore the building, but, as the evidence tends to show, was unable to procure a permit from the city authorities to restore the same as a four-story building, unless a considerable portion of some the walls was taken down and rebuilt. Plaintiff was unwilling to incur the additional expense of tearing down and rebuilding the walls, and restored the building as a three-story one. The delay in commencing the work of restoration seems in part to have been caused from the facts that defendant's goods (paints, oils, etc.) were in such a confused condition as a result of the fire that considerable time was consumed in invoicing them, etc., for the purpose of adjusting the fire insurance it had on its stock. There is a sharp conflict in the evidence in respect to what took place between plaintiff and defendant in regard to restoring the building as a three-story house. It is agreed by both parties that defendant refused to sign a contract or lease, that it would accept the building restored to a three-story one and continue to pay fifty dollars per month rent; it further appears that on defendant's refusal to sign such an agreement, plaintiff brought suit against it before a justice of the peace for one month's rent. Plaintiff's evidence is, that on the trial of that suit, S. E. Grote, chief officer of the defendant company, testified that if the plaintiff would restore the building to a three-story one and make it tenantable, defendant would continue to occupy under the lease and pay the fifty dollars per month rent; and relying on this statement, plaintiff thereafter dismissed her suit. Defendant's evidence tends to show that Mr. Grote did not make an unconditional promise or statement that the defendant company would be willing to pay the fifty dollars, if the building was restored as a three-story one, but said if it was at that time restored as a three-story

building and in a tenantable condition, the company would pay the fifty dollars per month rent. After the dismissal of the suit the plaintiff at once proceeded to have the restoration made and had it completed before February 24, 1904, and then demanded fifty dollars in payment of rent from February twenty-fourth to March twenty-fourth. Defendant refused to pay fifty dollars but expressed its willingness to pay forty dollars, and finally forty-five dollars which the plaintiff refused to accept. The learned trial judge ruled on this state of facts, that plaintiff had wrongfully ejected the defendant from a part of the premises, to-wit, the fourth floor of the building, and that defendant was not liable for any rent.

In Witte v. Quinn, 38 Mo. App. l. c. 690, the rule, where the landlord wrongfully ejects a tenant from a portion of the demised premises, in respect to the payment of rent, is stated as follows: "The rule seems well settled, that if the landlord wrongfully enters into any part of the demised premises, which are let for an entire gross sum, and shall expel the lessee therefrom, then there is a total suspension of the whole rent until the tenant is restored to the whole possession. This, too, is the rule notwithstanding the tenant may contiue occupancy of a portion of the leased property. · [Taylor's Landlord and Tenant (7 Ed.), sec. 378; Wood's Landlord and Tenant, sec. 473, and numerous other cases cited in notes.]"

McAdam, after getting rid of the old notion of eviction, said: "I think it may now be taken to mean this — not a mere trespass and nothing more, but something of a grave and permanent character, done by the landlord with the intention of depriving the tenant of the enjoyment of the demised premises." [2 McAdam on Landlord and Tenant (3 Ed.), p. 1291.]

In Tallman v. Murphy, 120 N. Y. l. c. 351, the following definition of eviction by McAdam is approvingly quoted, to-wit: "An eviction is defined to be when there

has been an obstruction to the beneficial enjoyment of the premises and a diminution of the consideration of the contract by the act of the landlord." [McAdam on Landlord and Tenant, 478, 479.]

In Edmison v. Lowry, 44 Am. St. Rep. 774, it was held: "The depositing by a landlord in a public street in front of premises leased for business purposes of lumber and other material, so that the public is deprived of easy access to the premises and caused not to approach them, and the tenant's business is greatly injured and his sales largely diminished, and the keeping of such material in the street, after being requested to remove it, constitute an eviction, and justify the tenant in his refusal to pay rent."

In Skally v. Shute, 132 Mass. l. c. 370-371, it is said: "Generally the question whether acts of the landlord in consequence of which the tenant abandons the premises amount to an eviction, is a question of law, and includes the question whether they constitute proof of the intent. . . . From the physical exclusion of the tenant from the premises, the law presumes an intention to evict; and wrongful acts of the landlord upon the premises, which render them permanently unsafe and unfit for occupancy, so that the tenant loses the enjoyment of them, carry with them the presumption of the intent to deprive the tenant of that enjoyment."

In Grommes v. St. Paul Trust Co., 147 Ill. 634, it was ruled: "Acts by the landlord in interference with the tenant's possession, to constitute an eviction, must clearly indicate an intention on the part of the landlord that the tenant shall no longer continue to hold the premises."

In every definition of an eviction to be found in the books, the wrongful act of the landlord is a controlling element. That an eviction can take place when brought about by an agency wholly independent of the landlord, beyond his control and against his will, as by

the agency of an accidental fire, or by a cyclone, seems to us against all reason, and we hold that the defendant was not evicted. Under the terms of the contract of lease, the defendant might have abandoned the premises after the fire, when it ascertained the plaintiff would not restore them to their original condition. The plaintiff did not covenant to restore the premises at all, in case they should be damaged or destroyed by fire, therefore, it was optional with her to restore or not restore after the fire, and hence she was at perfect liberty in the work of reconstruction to make such changes and alterations in the building as she deemed fit and proper and to leave off the fourth story if she chose to do so. She has in no respect breached the contract, and the defendant having elected to remain in possession of the building after it was reconstructed is bound to pay the rent according to the terms of the lease. It cannot enjoy the benefits of its contract and at the same time refuse to perform its obligations.

The judgment is reversed and the cause remanded. All concur.