## ABE GRALNICK v. NELLIE MAGID, Appellant.

### Division One, March 14, 1922.

1. **LEASE FOR YEARS: Destruction of Premises by Fire: Tenant
   Liable For Rent.** At common law, where premises are leased for
   a term of years and the lessee agrees to pay rent during the term,
   and the lessor does not covenant to rebuild, the destruction of the
   premises by fire will not excuse the lessee from the payment of the
   rent during the entire term of the lease.

2. ———: ———: **Repairs.** At common law, where premises are
   leased for a term of years and the lessee agrees to pay rent during
   the term, and the lessor does not covenant to rebuild or repair,
   the lessor is under no legal obligation to rebuild or repair the
   building after it has been destroyed or damaged by fire.

3. ———: ———: **Case Adjudged.** Defendant was not liable to
   plaintiff for damages to a stock of goods, caused by rains falling
   through a partially burned roof of the building containing such
   goods, where the lease from defendant to plaintiff provided that
   the "lessor shall not be liable to said lessee or agents, guests
   or employees for any damage caused to his, her or their person' or
   property by water, rain, snow, ice, sleet, fire, storms and acci-
   dents," and that "in. case of partial destruction of said premises
   so as to render it or any portion of it untenantable, a *pro rata*
   proportion of said rent shall be remitted or returned to said lessee
   until such time as again tenantable;" even though said lease
   further provided that "lessor agrees to do repairing" and such
   damages occurred while defendant's contractor was repairing the
   roof. The plaintiff's property was confessedly damaged by rain
   and water and both parties for a valuable consideration had ex-
   pressly agreed to and did exempt the lessor from all damages to
   the person and property of the lessee which might be caused by
   rain and water.

Appeal from St. Louis City Circuit Court.—*Hon. Karl
Kimmel,* Judge.

REVERSED AND REMANDED (*with directions*).

*M. U. Hayden* and *Anderson, Gilbert, Wolfort & Ely*
for appellant.

(1)  The court erred in setting aside the nonsuit, because under the terms of the lease the lessor was not liable to the lessees for any damage caused to his personal property by water or rain.  (2)  The court erred in sustaining the motion to set aside the nonsuit, because under the terms of the lease if the premises were untenantable in whole or in part the lease provides that the measure of damage should be a return or remitting of the rent.  (3)  The court erred in sustaining said motion, because the plaintiff cannot recover for any damages to his property when he permitted the same to stay in a building, the roof of which he knew had been damaged and was going to be repaired, and which he knew would not prevent rain from coming into the store where his property was located.  Cook v. Soule, 56 N. Y. 423; Gavan v. Norcross, 117 Ga. 359; Atkinson v. Kirkpatrick, 90 Kan. 519; Mershon v. Williams, 62 N. J. L. 785; Huber v. Ryan, 67 N. Y. S. 974.  (4)  The lessee is not exempted from payment of rent on account of the destruction of the premises by fire.  Gibson v. Perry, 29 Mo. 245; O'Neil v. Flanagan, 64 Mo. App. 87; Sedalia Co. v. Swift, 129 Mo. App. 471; Burns v. Fuchs, 28 Mo. App. 279.  (5) And the landlord was not bound to repair the premises after the fire.  Rogers v. Paint Co., 118 Mo. App. 300.

*John B. Reno* for respondent.

(1)  Plaintiff was entitled to go to the jury on the first count of his petition, which alleged the express undertaking of the landlord to repair within a reasonable time, his failure so to do, and the damage resulting therefrom as the proximate cause of such failure.  Crocker v. Hill, 61 N. H. 345; Arbend v. Exley, 52 W. Va. 476; Eberson v. Inv. Co., 130 Mo. App. 296, 109 S. W. 62; Green v. Bell, 3 Mo. App. 291.  (2)  Plaintiff was entitled to go to the jury on the second count of his petition, which alleged the negligent making of repairs on the part of the defendant, and that such negligence was the proximate cause of the loss.  Sulzbacher v. Dickie,

51 How. Pr. 500; Wertheimer v. Saunders, 95 Wis. 573; Rice v. Whitely, 115 Iowa, 748; Kohnle v. Paxton, 268 Mo. 463; Little v. Macadaras, 29 Mo. App. 332, 38 Mo. App. 187; Noggles v. Sellers, 183 S. W. 659.

WOODSON, P. J.—The plaintiff brought this suit in the Circuit Court of the City of St. Louis against the defendant to recover damages to a stock of shoes caused by water, through the alleged negligence of the defendant in not repairing the roof of the house, after a fire, in which the shoes were kept or stored.

The defendant owned the building in which the shoes were located and she leased it to the plaintiff for a shoe-store for two years. Plaintiff contends that it became and was the duty of the defendant to repair the roof within a reasonable time after the fire occurred, but which she negligently failed to do, and that while in that damaged condition, the rain descended in great quantities and wet and damaged the stock to the extent of $10,500.

<div style="margin-left:2em">Statement.</div>

A clearer view of the case can be had from the allegations of the petition which is in two counts, and the charging parts of each are as follows:

First Count: Plaintiff states that on or about the 12th day of August, 1918, a fire occurred in said building and that thereby the roof thereof was partically destroyed, so as to expose the contents of said building to the elements; that defendant failed and neglected to repair same within a reasonable time thereafter, although defendant well knew and had knowledge of said fire, and well knew and had knowledge that said roof needed to be repaired.

Plaintiff states that while said roof was unrepaired, by reason of defendant's failure and neglect to repair same within a reasonable time as aforesaid, that on or about the 2nd day of September, 1918, rain fell in large quantities and leaked and penetrated through the roof of said building and upon the property of plaintiff therein contained, whereby the same became wet and damaged

and unfit for use. Plaintiff states that by reason of the premises he was compelled to close his store and suspend the transaction of business thereat for a period of three days, and that for a further period of fourteen days said store remained wet, damp, moldy and filled with unhealthy odors, so that only half of plaintiff's usual volume of business could be therein transacted.

The second count alleges: Plaintiff states that on or about the 12th day of August, 1918, a fire occurred in said building and that thereby the roof thereof was partially destroyed so as to expose the contents of said building to the elements; that said building was covered by insurance, and that the agent or servants of the insurance company placed or caused to be placed on said roof a temporary covering intended to make the same rain proof; that said temporary covering was permitted to remain while a dispute with the insurance company concerning an adjustment of loss was pending; that on or about August 31, 1918, said dispute being settled, the agents or servants of said company removed said temporary covering, and that, thereafter, defendant's agents or servants entered upon said premises to repair said building, and the roof thereof, and carelessly and negligently tore down all of the cross-beams and supports of said roof, leaving said building and contents thereof exposed to the elements and carelessly and negligently placed upon the garret floor of said building a tarpaulin which did not wholly cover said garret floor, leaving the sides and ends thereof exposed, uncovered and unprotected, so that should rain fall the same might soak, leak and penetrate through said exposed, uncovered and unprotected portions of said garret floor, and upon the property of the plaintiff contained in said building, and carelessly and negligently placed said tarpaulin flat and uneven upon said garret floor so that there were hollows and depressions in the same, wherein, should rain fall, the waters thereof would gather in pools and soak, leak and penetrate through said tarpaulin and upon the property of the plaintiff contained in said building. And

carelessly and negligently placed said tarpaulin parallel with said garret floor and on the surface thereof, so that should rain fall the waters thereof would flow from said tarpaulin to the exposed, unprotected and uncovered portions of said garret floor, and thus soak, leak and penetrate through said garret floor and upon the property of the plaintiff therein contained.

Plaintiff states that while said roof was uncovered and unprotected as aforesaid and while said tarpaulin was negligently and carelessly stretched as aforesaid, and while said portions of said garret floor were uncovered, exposed and unprotected as aforesaid, and while said tarpaulin was placed parallel with and upon said garret floor as aforesaid, rain fell in large quantities and penetrated said exposed and uncovered roof and gathered in said hollows and depressions in said tarpaulin, and flowed from said tarpaulin to said exposed, uncovered and unprotected portions of said garret floor and leaked, soaked and penetrated through said garret floor and through said hollows and depressions in said tarpaulin and upon the property of the plaintiff, whereby the same became wet, damaged and unfit for use.

The second count also includes prayer for damages for ten thousand five hundred ($10,500) dollars.

The answer was a general denial.

The plaintiff identified and introduced in evidence a lease between the plaintiff and defendant for the property described in the petition, from February 20, 1918, to February 20, 1920, which lease was executed on November 1, 1917, The material parts of this lease involved in this appeal are as follows:

1. *"Said lessor shall not be liable to said lessee or agents, guests or employees for any damage caused to his or their person or property by water, rain, snow, ice, sleet, fire, storms and accidents,* or by breakage, stoppage or leakage of water, gas, heating and sewer pipes, or plumbing upon, about or adjacent to said premises.

2. *"In case of the partial destruction of said prem-ises so as to render it or any portion of it untenantable, a pro rata proportion of said rent shall be remitted or returned to said lessee until such time as again tenant-able.* The total destruction of said premises by fire, or otherwise, without fault or negligence of said lessee or his agents shall work a forfeiture of this lease.

3. *"Lessor agrees to do repairing."*

The plaintiff, Abe Gralnick, testified that he had been in business at Thirteenth and Biddle streets for about two (2) years prior to August 12, 1918; that about 10 o'clock on the morning of August 12, 1918, the roof of the building caught fire; that the fire department came around and put the fire out; that it was over around 12 o'clock; that his stock of goods was insured, and was damaged to the extent of one thousand nine hundred seventy-five dollars, which was adjusted on Saturday, the 17th day of August, 1918.

Plaintiff further testified that the stock that was damaged was all sold on a fire sale, with the exception of about one hundred dollars worth.

That part of the roof was burned through so that you could see daylight through to the garret floor, and that the salvage corps covered the roof with tarpaulins; that it was a shingle roof, gable shaped; that the damage to the roof was on both sides, no, on one side; that all the damaged part was covered by the salvage corps, tarpaulins were just tacked on the roof on top; that the roof remained in that condition until the 24th day of August, when there was a very big rain; that part of the tarpaulin must have blown off and water came through and damaged a part of the stock; that he rang up Mr. Magid and tried to get him to send some tarpaulins to protect the stock, and that Mr. Magid said he could not do anything for him; that he rang up the salvage corps and that they could not give him any more tarpaulin, but said they would send some one down to see if they could

fix them better, and they said one or two corners had blown off, and they tacked it; that the damage done to the stock by that rain was about four or five hundred dollars.

That on August 31st, on Saturday, the salvage corps took down the tarpaulins. They had settled with the insurance company, and they took down what they had up there.

Plaintiff further testified that he received the following letter:

"(Letterhead of N. Magid Cloak & Suit Co.)

St. Louis, Mo., August 28, 1918.

"A. Gralnick,
    1302 Biddle St., City.

"Dear Sir:

"I hereby notify you that my contractor, F. Lipman, will start to put on a new roof within the next 24 hours, so please protect yourself the best way you know how, as I am not responsible for any damages that occur during the time of his work, and I will also do my part to protect you as much as I possibly can,

"Yours respectfully,

N. Magid,

F. Lipman,

Contractor."

That on the 31st day of August some of the working tools to repair the roof were moved in there, and they said they would start making repairs very soon.

That nothing was done on the 31st except to move the materials in there; that he protested to Mr. Lipman not to leave the roof in the condition it was in and Mr. Lipman said he wasn't responsible and plaintiff ought to protect his stock, and that Mr. Lipman had sent him notice that he ought to protect his stock the best he could; that he was going to take down the roof and put on a new roof.

That finally Mr. Lipman agreed to get the tarpaulin and stretched it on the garret floor; stretched it flat. That there was nothing done on Saturday toward re-

pairing the roof; that nothing was done on Sunday and nothing done on Monday (which was Labor Day); that on Tuesday they took off both sides of the gables and all the cross beams and supports; that the original tarpaulin Mr. Lipman had placed there was still in the position it had been placed by him.

That on Tuesday night there was a very heavy rain all night and water came down and damaged the entire stock; that he discovered it early in the morning when he came; that water was dropping through the ceiling all the way down; that almost all the merchandise was wet; that the stock of goods was on the first floor, and on the second floor, and the whole thing was damaged.

Plaintiff further testified that around twelve thousand dollars was the wholesale cost of his stock.

As soon as the lease was introduced in evidence the defendant objected to the introduction of any other evidence on the ground that under the terms of the lease the plaintiff could not recover.

The court sustained this objection and therefrom the plaintiff took a non-suit with leave, etc. Subsequently on motion to set aside the non-suit, the court sustained the same; and from the order setting aside the non-suit the defendant duly appealed the cause to this court.

I. While there are several legal propositions presented and discussed by counsel for the respective parties in their briefs and printed arguments, but from the view we take of the case there is but one of them which challenges special notice and that is the meaning of the written lease of the store building introduced in evidence, made and executed by the defendant to the plaintiff; all other questions raised are subservient to the meaning of that lease, and must necessarily give way to its provisions.

Before taking up the meaning of the lease it might be well to state some fundamental principles of the common law, as they will shed some side lights upon the main question involved, and the first one is: that where

Gralnick v. Magid.

premises are leased for a term of years and the lessee
agrees to pay rent during the term, and the
lessor does not covenant to rebuild, the de-
struction of the premises by fire will not
excuse the lessee from the payment of the
rent during the entire term of the lease. [Gibson v. Per-
ry, 29 Mo. 245; O'Neil v. Flanagan, 64 Mo. App. 87;
Mill & Lumber Co. v. Swift & Co., 129 Mo. App. 471;
Burnes v. Fuchs, 28 Mo. App. 279.]

*Landlord and Tenant: Rent: Repairs.*

And second: that under such a lease the lessor is
under no legal obligations to repair the building after it
has been damaged by fire. [Rogers v. Grote Paint Co.,
118 Mo. App. 300.]

II. We shall now return to the question as to the
meaning of the lease. We have quoted in the statement
of the case and italicized all the provisions of the lease
which are material to the question now under considera-
tion. For convenience I have numbered those provisions
1, 2 and 3.

By reading said provision number 1, it will be clear-
ly seen that the lessor specifically contracted with the
lessee against the former's legal liability for any per-
sonal injuries done to said lessee, his
agents, guests or employees or to his or
their property, by reason of "water, rain,
snow, ice, sleet, fire, storms and accidents," etc., while
upon or about the leased premises, and to emphasize and
make clear the meaning of said paragraph one, paragraph
two provides that if a fire should partially destroy the
same building so as to render it untenantable, that the
only risk the lessor should suffer would be a *pro rata*
reduction of the rents during the untenantableness of the
building and to that extent alone did the lessor assume
any liability, and that was the conditional loss of a por-
tion of the rents. She nowhere agreed to make repairs to
the premises so as to protect the lessee against damages
to the lessee or his property on account of fire, water,
etc.; but upon the contrary she expressly exempts herself
from all such liability as stated in said paragraph 1.

*Lease: Meaning.*

While it is true in paragraph number 3 the "lessor agrees to do repairing," that paragraph nowhere states what kind of repairing she is to do, but most certainly that paragraph does not mean that the lessor was to make such repairs as would protect the lessee and his property from damages on account of rain and water, ice, etc., for the obvious reason that both parties had agreed in paragraph 1 that the lessor should not be liable for any damages done to the property of the lessee on account of water, rain, ice, etc., and therefore we must look for other reasons the parties had in mind in order to ascertain what the intention of the parties was when they agreed that the "lessor agrees to do repairing."

These are the words which are found in the ordinary lease regarding the ordinary wear and tear of leased premises, that is, such as the necessary painting to preserve the buildings, against accidental breaking of glass, papering when necessary, or accidental or natural repairs of floors, doors, stairs, locks, hinges, etc., which need repairing because of the ordinary use and wear of the premises. But be that as it may, and concede for the sake of the argument, without deciding it, that the words the "lessor agrees to do repairing" as found in paragraph three, meant that she was to replace the roof or other parts of the building when destroyed by fire, yet we are unable to see in what possible manner that would benefit the lessee in this case, or render the lessor liable, when both parties clearly agree by the language found in paragraph 1, that the lessor should not be liable to the lessee because of any damages done to him or his property on account of rain, water, etc.

It is no answer to this argument to say that this is an action for negligence against the lessor for not making the repairs she contracted to make, for the obvious reason that had it not been for the rain and water mentioned in the evidence no damages would have been done to the stock of shoes, even though the repairs had not been promptly made, and that being true, the plaintiff's property was confessedly damaged on account of the rain

and water mentioned, and both parties for a valuable consideration expressly agreed to and did exempt the lessor from all damage to the person and property of the lessee which might be caused by the rain and water. This being true, we are unable to see under what conditions the defendant should have been held liable to plaintiff under the contract for the damages sustained.

There are numerous authorities cited by counsel for plaintiff, but this, as in almost all other cases of this kind, depends upon its own peculiar facts, and other cases shed but little if any light upon the legal principles involved.

Under the views we have expressed we are of the opinion that the trial court erred in setting aside the judgment for the defendant and therefore order the trial court to reinstate the same, and to declare the plaintiff is not entitled to a recovery. All concur.