JOSEPH RODIER ET AL., RESPONDENTS, v. KLINE'S INC., APPELLANT.
—47 S. W. (2d) 230.

Kansas City Court of Appeals. February 1, 1932.

*Otto P. Higgins, J. Frank Flynn* and *Virgil Yates* for respondents.

*McVey & Freet* and *John C. Baumann* for appellant.

BLAND, J.—This is an action in which plaintiffs, sub-tenants in a building owned by the defendant, sue the latter for its alleged neglect in failing to remedy the condition of stoppage in a drain or

downspout upon the building, after it knew or could have known of the condition, resulting in rainwater coming into the premises and injuring plaintiffs' stock of goods and equipment.

At the conclusion of plaintiffs' testimony they took an involuntary nonsuit, with leave. Thereafter they filed a motion to set aside the nonsuit. This the court sustained, resulting in this appeal by defendant.

The facts show that on the 15th day of July, 1924, defendant leased the "rear portion of the second floor" of a three story building located in Kansas City, to one McNinch, for a term beginning on the 1st day of September, 1924, and ending on the 31st day of August, 1929. Among other things, the lease required McNinch,

"Will, during the life of this lease, make all repairs of every kind and nature necessary to be done within or appurtenant to the premises, including all stairways and the upkeep and replacement of all glass in windows and skylights or any other glass in or about the premises, except repairs to the roof and downspouts (skylights not included) which shall be made by the lessor."

The lease also provided that McNinch

"Will not hold lessor liable for and will pay all damage to person or property by whomsoever suffered on or about the premises, stairways, approaches, sidewalks or alleys adjacent or pertaining to the same and will defend, indemnify and save lessor harmless against all such damage claims and aganst all costs, attorneys' fees and expenses therewith connected."

The lease further provided:

"Lessor is not obligated to make any repairs, except structural repairs and repairs to the roof and downspouts, and lessor is not to be liable for any damage on account of work or failure of work, if any, herein stipulated to be done by lessor. . . .

"All the covenants, agreements and undertakings in this lease contained, shall be construed as covenants running with the land, and all rights given hereby to and obligations hereby imposed upon the respective parties shall be construed as accruing to and binding upon the heirs, executors, administrators, assigns and successors in interest to the parties hereto, respectively."

On July 26, 1924, a portion of the property that McNinch had leased from defendant was sublet by the former to the plaintiffs, the lease describing the property subleased as the "south room on the second floor, rear, of 1118 Walnut street." This lease was for a term beginning December 1, 1924, and ending on the 31st day of August, 1929. This lease provided that it was "made subject to lease dated July 15, 1924—Klines Inc. and J. R. McNinch."

The evidence shows that plaintiffs operated a violin shop in the premises leased by them from McNinch; that on August 7, 1928, a heavy rain came and that water, falling upon the roof, was dammed up thereon and ran into the room on the third floor of the building above plaintiffs' shop, thence into their room, damaging their stock of goods and the fixtures. The water was damned up by reason of a drain on top of the building, which connected with the downspout, having become clogged with rubbish and a newspaper.

There were several tenants upon the second floor of the building in question, one of whom was Thompson, a photographer. Thompson used the space on the third floor, immediately above plaintiffs' room, for a store room. Prior to August 7, 1928 and, about June 1st, of that year, the southwest portion of plaintiffs' room began to show signs of water coming through the ceiling. After every rain the plaster and paper were stained with water. The rainwater came through two or three times after the first. On one occasion plaintiffs were required to put pans in two or three different places to catch the dripping water. Plaintiffs complained to McNinch, who said he would take it up with the defendant. Nothing was done, so plaintiffs called Mr. Arnold, a representative of defendant. The latter came and said that the matter would be taken care of. This was sometime in June. This condition of leakage was reported to defendant two or three times prior to August 7th. Each time defendant agreed to take care of it.

Mr. Cowan, who was employed as engineer for defendant and whose duty it was to "look after all the machinery and all troubles" about the building in question, testified that there had not been any inspection of the roof or downspout for a period of six months prior to August 7, 1928; that no one during the summer of 1928, prior to said date, asked him to go up on the roof and find out what was causing the leak. However, he testified that he was on top of the adjoining five story building every day and from there could see the roof of the building in question and could see into the mouth of the downspout; that prior to the month of August he had never seen any paper, rubbish or other obstruction in it, nor had he seen any rubbish upon the roof; that the newspaper that was clogging the opening in the drain "wasn't very old."

The evidence shows that 3.37 inches of rain fell between 12:45 and 6:37 A. M. of August 7, 1928; that during that time the highest velocity of wind was forty miles per hour.

It is insisted by defendant that the court erred in sustaining plaintiffs' motion to set aside the involuntary nonsuit for the reason that defendant was relieved of liability for the damage done plaintiffs'

stock of goods on August 7, 1928, by the expressed provisions of the lease between it and McNinch. This contention must be sustained. The Supreme Court, in construing a lease similar in many respects to the one in the case at bar, held that the owner of the premises was not liable for damage done to the lessee's stock of goods by rain and water coming through an opening in the roof. [See Gralnick v. Magid, 292 Mo. 391.] In the Gralnick case the court said, l. c. 400, 401:

"Concede for the sake of the argument, without deciding it, that the words the 'lessor agrees to do repairing' as found in paragraph three, meant that she was to replace the roof or other parts of the building when destroyed by fire, yet we are unable to see in what possible manner that would benefit the lessee in this case, or render the lessor liable, when both parties clearly agree by the language found in paragraph 1, that the lessor should not be liable to the lessee because of any damages done to him or his property on account of rain, water, etc.

"It is no answer to this argument to say that this is an action for negligence against the lessor for not making the repairs she contracted to make, for the obvious reason that had it not been for the rain and water mentioned in the evidence no damages would have been done to the stock of shoes, even though the repairs had not been promptly made, and that being true, the plaintiff's property was confessedly damaged on account of the rain and water. mentioned, and both parties for a valuable consideration expressly agreed to and did exempt the lessor from all damages to the person and property of the lessee which might be caused by the rain and water. This being true, we are unable to see under what conditions the defendant should have been held liable to plaintiff under the contract for the damages sustained."

Plaintiffs attempt to distinguish the case at bar from the Gralnick case by saying that in that case the tenant "had entire control of the premises and defendant had a perfect right to relieve itself of any liability concerning the same." The Gralnick case was not decided upon the question of the right to control the premises, but upon the wording of the lease. Although defendant was to make the repairs on the roof and downspout, under the terms of the lease between defendant and McNinch, it is conceded that the lease also provided that it was not to be liable for any damage on account of its failure to do so. What we have quoted from the Gralnick case is directly in point.

It seems to be the contention of plaintiffs that to permit defendant to escape liability for plaintiffs' loss, when defendant had agreed to look after the roof and downspout, would be allowing de-

fendant to contract against the effect of its own negligence. In this connection plaintiffs cite the case of Goldman v. White & Davis Lbr. Co., 38 S. W. (2d) 62, decided by this court. However, that case was decided by two judges, only one of whom concurred in the result. Therefore, the opinion in that case was not the opinion of the court. [Coates v. K. C. T. Ry. Co., 43 S. W. (2d) 817.] It is not in every instance that a party may not contract against his own negligence. [See Gralnick v. Magid, supra; 6 R. C. L. 727, sec. 132; 13 C. J. 491, sec. 437; Ordelheide v. Wab. R. R. Co., 80 Mo. App. 357; Hartford Fire Ins. Co. v. Chi. etc., Ry. Co., 70 Fed. 201.]

In the Goldman case the court said l. c. 67:

"Defendant relies upon the ruling of the Supreme Court in Gralnick v. Magid, 292 Mo. 391, 238 S. W. 132, 28 A. L. R. 1530.] In that case the damage was due to a rainstorm, and it was not claimed, as here, that it was due to active negligence of the landlord. The facts in that case and the ruling of the court do not apply here."

The conclusion reached by the court in the Goldman case can properly be based upon the theory that the facts in that case showed the landlord to be guilty of active or positive negligence, as distinguished from passive negligence or negligence by omission. There is authority holding that a lease, with provisions similar to those in the Goldman case, releases the landlord from acts of omission but not from active negligence. [Lewis Co. v. Met. Realty Co., 98 N. Y. S. 391; Lewis Co. v. Met. Realty Co., 189 N. Y. 534; Unterberg v. Israel, 171 N. Y. S. 133; Drescher Rothberg Co. v. Landeker, 140 M. Y. S. 1025; Mahnken v. Gillispie, 43 S. W. (2d) 797.]

Of course, in the case at bar there was no active negligence, but the claim is that defendant merely failed to discover and remedy the stoppage in the drain and downspout.

However, plaintiffs contend that the rule as between the owner and the lessee and the owner and the sub-tenant, is different; that plaintiffs, being sub-tenants, there was no privity of contract between them and defendant; that plaintiffs are not bound by the covenants in the lease relative to repairs and lack of liability for failure to repair on the part of defendant. Assuming, without deciding, that there is no privity of contract of the character claimed between plaintiffs and defendant, lack of such privity does not mean that the provisions of the lease between defendant and McNinch do not govern the situation in any respect. While it is held that a sub-lessee is not required to perform any of the covenants of the lease between the owner and the lessee, except those running with the land (see Greer v. Zinc Co., 126 Mo. App. 173, 182, 183; 35 C. J. 1003), "a sublessee can in no event have any greater rights against the lessor than were

given by the original lease to the lessee. Sublessees are charged with notice of the terms of the lease and are bound by its conditions.'' [35 C. J. 1002.] It would, therefore, appear that regardless of the fact that plaintiffs, in their lease with McNinch, expressly provided that the lease should be subject to that between defendant and Mc-Ninch, they are bound by the provisions of the latter lease, in so far as their right to recover against defendant in this suit is concerned.

The judgment is reversed and the cause remanded with directions to reinstate the nonsuit. All concur.