## SINCLAIR REFINING CO. v. STEVENS et al.

### No. 11964.

Circuit Court of Appeals, Eighth Circuit.
Nov. 5, 1941.

Rehearing Denied Nov. 26, 1941.

James A. Potter, of Jefferson City, Mo. (Ragland, Otto & Potter and Forrest P. Carson, all of Jefferson City, Mo., and Roger B. Jones, of Kansas City, Mo., on the brief), for appellant.

Jean Paul Bradshaw, of Lebanon, Mo. (Bradshaw & Fields, Robert C. Fields, and Mary Alice Hunt, all of Lebanon, Mo., on the brief), for appellee.

Before GARDNER, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken by the Sinclair Refining Company to reverse a judgment rendered against it upon the verdict of the jury in an action brought by Mr. and Mrs. Stevens to recover for damages to their property by fire resulting from the company's alleged negligence. The action was brought in the state court and was duly removed to the federal court. We will refer to the Stevenses as plaintiffs and to the company as defendant.

The defendant has not brought up the testimony given on the trial but has presented only that it was and is entitled to judgment in its favor on the pleadings. It moved for judgment on the pleadings shortly after the pleadings were made up and the motion was denied. It moved for a directed verdict on the same ground at the conclusion of the evidence and also moved on the same ground for judgment notwithstanding the verdict, both motions being denied.

It is argued for the plaintiffs that under the Missouri law the defendant "waived any objection to the pleadings by going to trial" but Rule 12(c) of the Rules of Civil Procedure for the District Courts of the United States, 28 U.S.C.A. following section 723c, expressly establishes the right of the defendant to "move for judgment on the pleadings * * * after the pleadings are closed but within such time as not to delay the trial". The record discloses that the defendant throughout the proceedings consistently asserted and maintained that the pleadings showed on their face that the defendant had a good and valid defense to the claims of the plaintiffs as a matter of law, that there was no amendment to the pleadings express or to be implied, that the defense as a matter of law so asserted by defendant was properly called to the trial court's attention and submitted for decision and the court ruled upon it adversely to defendant. The timely appeal therefore requires us to review the question of law involved in the trial court's decision.

It was alleged in plaintiffs' amended petition, on which the case was tried, that plaintiffs own a lot in Camden County, Missouri, adjacent to State Highway Route No. 54 on which they were engaged in January, 1939, in constructing a frame

building, a part of which was to be devoted to the use of an oil and gasoline service station. That on January 4, 1939, plaintiffs agreed with defendant to handle Sinclair petroleum products at the service station upon its completion. That in May and June, 1939, defendant delivered and installed on the premises service station equipment, including storage tanks, breather pipes, pumps, and electric equipment. That after the equipment was installed and had been operating a few days and on July 6, 1939, the defendant opened a vapor proof box containing the wires and switches on one of the pumps and disconnected, connected and changed the position of the wires located therein. That plaintiffs had no knowledge of the proper method of installing the equipment and so informed defendant, and plaintiffs were by defendant induced to and did rely upon defendant for the proper installing, repairing and altering of the same. It was then alleged:

"That wholly disregarding its duty to exercise due care in the installing, repairing and altering of said equipment, said defendant, carelessly and negligently installed, repaired and altered said equipment as hereinabove pleaded, and that such negligence was, in part, as follows, to-wit:

"A. The defendant failed to install in rigid iron conduits the electrical wires leading from plaintiffs' building to the motors located in defendant's pumps; and

"B. the defendant failed to install the armored cable used by it in extending the electric wires from plaintiffs' building to the motors located in defendant's pumps, in such a manner as to complete the metallic connection between the pump and the cable armor; and

"C. the defendant failed properly to connect and insulate the exposed wires leading from plaintiffs' building to the motors located in defendant's pumps and failed to properly tape and insulate the exposed wires and failed to make a proper connection between said wires and the motors in defendant's pumps; and

"D. the defendant failed to provide adequate mechanical protection for the armored cable installed by it and leading from plaintiffs' building to the motors located in defendant's pumps; and

"E. the defendant failed to install a switch properly protected by fuses at the point where defendant connected its wires with plaintiffs' power line at an outlet located on the inside of plaintiffs' building; and

"F. the defendant, after installing the electric wires from defendant's pumps to plaintiffs' building in the manner hereinabove alleged, thereafter located immediately adjacent to said wires at the place where they came through the walls of said building, three breather pipes, running from the underground storage tanks along the side and against said building, for the purpose of carrying the gases and fumes from said underground tanks, and equipped said breather pipes with open elbow joints turned in such manner as to point directly toward said building so that said defective wiring as hereinabove alleged could and did ignite the gasoline fumes escaping from said breather pipe; and that as the direct and proximate result of the above enumerated acts of negligence the electrical equipment used in operating said pumps became overheated, thereby producing a fire on plaintiffs' premises on the 18th day of July, 1939; and

"That as a direct and proximate result of the carelessness and negligence of the said defendant, as aforesaid, the building of the plaintiffs located on the premises aforesaid on the 18th day of July, 1939, was totally destroyed to plaintiffs' damage in the amount of nine thousand dollars ($9,000.00).

"Wherefore, the premises considered, plaintiffs pray judgment, in this the first count of their first amended petition, against the defendant in the sum of Nine Thousand Dollars ($9,000.00) and for their costs in this behalf expended."

In Count II of the amended petition damages were claimed on account of the same acts of negligence for the loss of the contents of the building in the amount of $5,000.

In its answer, defendant admitted that there had been damage by fire occurring on plaintiffs' premises and that it had installed the service station equipment referred to in plaintiffs' amended petition on plaintiffs' premises "in accordance with terms of a certain 'Equipment Rental Agreement', 'Lease Agreement' and 'Dealer's Permit'", duly entered into in writing between plaintiffs and defendant on the date of January 4, 1939, specified by plaintiffs. Copies of the documents were attached to the answer together with two "Receipts for Equipment and Material" which it was alleged were executed and

delivered by plaintiffs to defendant after the installation of the service station equipment, in accordance with the Equipment Rental Agreement. Defendant denied liability for the fire damage on the grounds that it had not been negligent, that plaintiffs were guilty of contributory negligence and that the agreements by their express terms released defendant from liability on account of any of the matters alleged by plaintiffs.

In their reply the plaintiffs admitted the execution of the documents included in defendant's answer and alleged that the instruments make no provision for the installation of the equipment, that defendant undertook to install the same and thereafter to make repairs and alterations of the same on its own responsibility and in doing so was guilty of active and positive acts of negligence; that the duty was imposed upon plaintiffs under the said agreements to repair and maintain the equipment but that defendant had demanded the right to make repairs and had exercised it negligently.

■ Rule 10(c) of R.C.P. provides that a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes and it is the contention of defendant that the provisions of the contracts pleaded by it and admitted by the plaintiffs preclude the plaintiffs from maintaining their action. More particularly: By the terms of the Equipment Rental Agreement the defendant rented to the plaintiffs designated "Customer", the equipment for the service station and agreed to deliver it. By the "Lease Agreement" the plaintiffs leased the service station, including the ground and all the equipment thereon to the defendant; and by the "Dealer's Permit" the defendant for specified consideration granted to the plaintiffs the right to use the service station for one year. The several agreements provided that plaintiffs should maintain the equipment in good condition and repair at their own expense. The Lease Agreement, however, also reserved to the defendant the right of equipping and maintaining on the demised premises any and all improvements and appliances it desired or required to carry on the business.

The Equipment Rental Agreement provides that: "12. Customer [plaintiffs], for itself, its heirs, executors, administrators, successors and assigns, hereby releases, relinquishes and discharges, and agrees to indemnity, protect and save harmless, Sinclair, its successors and assigns, of and from any and all claims, demands and liability for any loss, damage, injury or other casualty to property (whether it be that of either of the parties hereto or of third persons), and to persons (whether they be third persons, Customer, or employees or either of the parties hereto), by reason of any leakage, fire or explosion of or from any such equipment or any part thereof, or of any gasoline, oils, or other products in or about or contained in the same, or by reason of any defect in the construction or installation of such equipment, or by reason of the use or operation of such equipment, or by reason of the placing, erection, falling, or dislocation of such equipment or any part thereof, or by reason of any other casualty, whether due to the negligence of Sinclair or otherwise."

The Dealer's Permit in which plaintiffs are designated "Party of the Second Part", provides: "9. Second Party, for himself, his heirs, executors, administrators and assigns, hereby releases, relinquishes, discharges, and agrees to indemnify, protect and save harmless, Sinclair, its successors and assigns, of and from any and all claims, demands, and liability for any loss, damage, injury or other casualty to property (whether it be that of either of the parties hereto or of third persons) and to persons (whether they be third persons, Second Party, or employees of either of the parties hereto), caused by, growing out of, or happening in connection with, Second Party's use and occupancy of said premises or any buildings, structures, equipment or appliances located or to be located thereon, or by reason of any other casualty, whether due to negligence of Sinclair or otherwise."

It is the contention of defendant that these release and indemnity agreements shown by the pleadings constitute a complete bar to recovery upon the cause of action asserted by plaintiffs.

■ It is conceded that the controlling law is that of Missouri and that under the law of that state parties who for mutual business advantage enter into a contract for the use of a location and equipment to be installed thereon and used in a business involving risks and hazards, may bind themselves by contract to indemnify against or relieve from liability on account of future acts of negligence. Bates Coal Mining & Mercantile Company v. Missouri Pacific

Railroad Company, 222 Mo.App. 221, 296 S.W. 1049; Wabash Railroad Co. v. Ordelheide, 172 Mo. 436, 72 S.W. 684; Ordelheide v. Wabash Railroad Co., 175 Mo. 337, 75 S.W. 149; American Cent. Insurance Co. v. Chicago & Alton Ry. Co., 74 Mo.App. 89, 97, et seq.; Harnden v. Southern Surety Co., 200 Mo.App. 162, 164, 165, 204 S.W. 34; Kansas City, Memphis & Birmingham Railroad Co. v. Southern Railway News Co., 151 Mo. 373, 52 S.W. 205, 45 L.R.A. 380, 74 Am.St.Rep. 545; Equitable F. & M. Insurance Co. v. St. Louis & S. F. Railroad Co., 134 Mo.App. 48, 114 S. W. 546; Sinclair Refining Co. v. Reid, 60 Ga.App. 119, 3 S.E.2d 121; Westre v. Chicago, M. & St. P. Ry., 8 Cir., 2 F.2d 227; Sunlight Carbon Co. v. St. Louis & S. F. Ry. Co., 8 Cir., 15 F.2d 802, 805, 806.

The plaintiffs express the concession in their brief "An indemnitor may by clear and unequivocal language make a legal contract and bind himself to indemnify against loss from future acts of negligence"; but they contend that Missouri law makes an exception where a landlord and tenant relationship exists and that such relationship resulted from the contracts in this case which they contend made the defendant the landlord and the plaintiffs tenants, and they contend that the contracts did not put the duty to install or repair the equipment upon the defendant and that the defendant in installing and repairing the equipment acted as a volunteer outside the contemplation of the contracting parties, and therefore defendant cannot defend the action under the quoted provisions of the agreement.

In response to these contentions of the plaintiffs, the defendant presents (1) that the contract of the parties contemplated that defendant would install the service station equipment; (2) that the amended petition does not plead that plaintiffs suffered damage as the proximate result of any negligence of defendant in making repairs, and (3) that the contract does not make the defendant the landlord in relation to the plaintiffs.

■ 1. We think it clear that it was the intention of the parties plainly evidenced by their writings that the defendant should furnish and install the equipment for the service station. The plaintiffs alleged that they had no knowledge of the proper method of installing the equipment and so informed defendant, and the Lease Agreement provides:

"7. Lessee [defendant] shall have the right and privilege of erecting, placing, constructing, equipping, maintaining and operating on the demised premises and in connection with said station any and all structures, improvements, appliances, containers and conveyors of whatsoever kind, on, under and above the ground, it may desire to use or may require in operating, transacting, carrying on and conducting on said premises its business of storing, distributing and marketing products of refined petroleum. Any installation heretofore or hereafter made by Lessee of its equipment, of its signs advertising its products, or of any of its property upon said premises shall be conclusive evidence of Lessee's entry into possession of said premises under the terms of the within lease.

"8. Lessee shall have the right to make proper connections with any and all water-, gas-, and sewer-lines and pipes on the demised premises, and may continue the use and service thereof during the term of this lease."

The Equipment and Material Receipts, executed after the installation of the equipment, provide: "If prior to delivery of the equipment or materials described above the borrower has signed Sinclair Refining Company's form of * * * equipment rental agreement [which plaintiffs had done], the borrower hereby agrees that said equipment or materials are hereby received and are to be retained by the borrower under and in accordance with the terms and conditions of such * * * equipment rental agreement."

There can be no doubt, in view of the foregoing, that the equipment was delivered and installed by defendant and received by the plaintiffs "in accordance with the terms and conditions" of the written agreement and within the contemplation of the parties and the quoted release and indemnity provisions were applicable to the transaction and absolved the defendant from liability to the plaintiffs for any negligence in the installation of the equipment.

2. As to the claim that defendant became liable for negligence in making repairs after the installation of the equipment.

Examination of the amended petition discloses that after reciting the course of the transaction between the parties the allegations which follow are that the damages sustained by plaintiffs were the proximate result of five specific acts of negli-

gence on the part of defendant. These specific acts are set out above and no one of them is an act of negligence on the part of defendant in making repairs. These specific charges follow the general statement:

"8. That wholly disregarding its duty to exercise due care in the installing, repairing and altering of said equipment, said defendant carelessly and negligently installed repaired and altered said equipment as hereinabove pleaded, and that such negligence was, in part, as follows, to-wit:" Then follow the specific charges.

The pleading falls within the rule stated by the St. Louis Court of Appeals in Munsey v. Eagle Packet Co., 50 S.W. 2d 754–756, 757, as follows: "It is a trite doctrine that, where a general charge of negligence is followed by a specific charge, the specific charge supersedes the general, and that, if a plaintiff under such circumstances recovers at all, it must be upon the specific act or acts of negligence and not upon the general. Zasemowich v. Amer. Mfg. Co. (Mo.Sup.) 213 S.W. 799, 802; Pointer v. [Mountain] Ry. Const. Co., 269 Mo. [104], 109, 189 S.W. 805, L.R.A.1917 B, 1091; McGrath v. Transit Co., 197 Mo. 97, 94 S.W. 872; Papamichael v. Wells, (Mo.App.) 33 S.W.(2d) 1058; Boeckmann v. Milling Co. (Mo.App.) 199 S.W. 457; Feary v. Met. St. Ry. Co., 162 Mo. 75, 62 S.W. 452; McManamee v. Ry. Co., 135 Mo. 440, 37 S.W. 119; Waldhier v. Ry. Co., 71 Mo. 514; Pate v. Dunbauld, 298 Mo. 435, 250 S.W. 49."

It follows that plaintiffs could not recover on the ground that defendant had been guilty of negligence in repairing the equipment. Farm & Home Sav. & L. Ass'n v. Armstrong, 337 Mo. 349, 85 S.W. 2d 461.

3. Plaintiffs also contend that the contracts made the defendant the landlord of the plaintiffs and that under Missouri law a landlord may not contract with his tenant to be released from liability to his tenant for future injuries which may be occasioned by the landlord's entering upon the premises and making repairs in such a negligent manner as to create a dangerous condition from which the injuries result. It is contended that the release and indemnity provisions here in question were on this ground repugnant to the public policy of Missouri and therefore can not bar recovery.

The Lease Agreement gave to the defendant possession of both the ground and the equipment constituting the service station as lessee from the plaintiffs as lessors. It is argued that the Dealer's Permit then reversed the relationship, making the defendant the lessor. Examination of the instruments discloses that such construction of the instruments is erroneous. The three papers were executed at the same time and bear the same date. They all relate to the same subject matter and it is conceded that together they constitute a single contract. The Dealer's Permit as a division of the whole contract is what its name implies, a permit to use the service station for carrying on the specified business in which the parties were mutually concerned. After giving plaintiffs the right to use and operate the station for one year for the purposes of the business, the Permit proceeds:

"5. In consideration of being permitted to use and occupy said station and premises, to operate the same for his own account, for each month during the period in which this Permit shall be in effect or for each month of any renewal or extension thereof, Second Party shall pay Sinclair in accordance with either of the following:

Strike out either "A" or "B", whichever does not apply

A. —

B. A sum equal to One half cent ($\frac{1}{2}$¢) cent(s) per gallon of all gasoline which shall be delivered to said station for sale therefrom, payable upon demand from Sinclair.

"All sums payable hereunder shall be payable in lawful money of the United States at 1907 Grand Ave Kansas City Missouri or at such other place as Sinclair may from time to time designate.

"6. Second Party [plaintiffs] covenants and agrees that he will use and occupy the premises and station in a careful, safe and proper manner; that he will not permit or suffer any waste thereon or thereof, or any nuisance thereon or thereabout; and that he will maintain said premises in a clean, neat, orderly and sightly condition. Second Party further covenants and agrees that he will, at his own cost, maintain in good condition and repair any and all buildings, structures, equipment, appliances, and other personal property on said premises; and that he will not encumber or re-

move the same, or do or suffer to be done anything whereby the same or any part thereof may be seized, taken on execution, attached, destroyed or injured, or by which the right of Sinclair therein or the title thereto may in any way be altered, impaired or prejudiced; it being expressly agreed that Second Party acquires hereunder no interest in any buildings, structures, equipment, appliances, or other property now on said premises or which may thereafter be placed thereon by Sinclair, except the right to use the same as in this Permit provided."

In the receipts the plaintiffs are referred to as the borrowers of the equipment.

 It is apparent from these provisions and the contract as a whole that the defendant did not demise or grant any leasehold interest in the property to plaintiffs and that the only landlord and tenant relationship was that created by the lease executed by the plaintiffs as lessors to the defendant as lessee. The plaintiffs remained the owners of the land, exacting rent for it from the defendant as lessee. We find the landlord and tenant cases relied on by the plaintiffs to avoid the release and indemnity provisions, Edwards v. Noel, 88 Mo.App. 434; Moorshead v. United Railway Co., 203 Mo. 121, 100 S.W. 611; Lasky v. Rudman, 337 Mo. 555, 85 S.W.2d 501; Mahnken v. Gillespie, 329 Mo. 51, 43 S.W. 2d 797; Ambruster v. Levitt Realty & Imp. Co., 341 Mo. 364, 107 S.W.2d 74, 75; Lahtinen v. Continental Bldg. Co., 339 Mo. 438, 97 S.W.2d 102; Logsdon v. Central Dev. Ass'n, 233 Mo.App. 499, 123 S.W.2d 631; Byers v. Essex Inv. Co., 281 Mo. 375, 219 S.W. 570; Davis v. Cities Service Oil Co., Mo.App., 131 S.W.2d 865; Kirshenbaum v. General Outdoor Adv. Co., 258 N. Y. 489, 180 N.E. 245, 84 A.L.R. 645; Jadronja v. Bricker, 49 Ga.App. 37, 174 S.E. 251; Goldman v. White & Davis Inv. Co., 225 Mo.App. 1023, 38 S.W.2d 62; Rodier et al. v. Kline's, Inc., 226 Mo.App. 474, 47 S.W.2d 230; Gralnick v. Magid, 292 Mo. 391, 238 S.W. 132, 28 A.L.R. 1530; West v. American Tel. & Tel. Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956; Six Companies of California v. Joint Highway District, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114; Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109; Corpus Juris, Vol. 35, 1142; Restatement of the Law of Torts, § 362, p. 982; Ruling Case Law, Vol. 6, 727; Corpus Juris, Vol. 36, 236, are not applicable to the facts pleaded and we refrain from discussing them.

 The contracts pleaded by defendant and admitted by plaintiffs are on printed forms, too long to set out in full, and are evidently standard forms used by defendant to evidence the common understanding it has with its very numerous service station operators. The documents are doubtless expanded from long and wide experience. It may be that all the print in them is not always read by the station men. But there is nothing obscure or ambiguous about the plainly expressed and reiterated requirement that the independent station operator must take the risk necessarily incident to his operation of the equipment and handling the products which are under his control, nor about his obligation to relieve the defendant from liability and to save it harmless in case of damage from negligence, even though the defendant may be negligent. The provisions should not be read out of the contract. In the long run, they doubtless affect costs and profits and in the absence of legislation or settled public policy the courts may not find them unreasonable or invalid.

As the pleadings disclosed on their face that the plaintiffs had released the defendant and indemnified it against the losses sued for, the motion of defendant for judgment on the pleadings should have been, and is now, sustained.

Reversed with direction to enter judgment on the pleadings for defendant.